THE STATE OF NEBRASKA, EX. REL. ELIZABETH PHILLIPS, v. SCHOOL DISTRICT No. 9, NUCKOLLS COUNTY.

School District Bonds.   Certain citizens of an adjoining state procured from a county superintendent the organization of a school district in this state, there being at the time but three legal voters therein and but three children of school age.   At the first election one of said citizens was elected director and one treasurer of said district.   The treasurer then removed to this state, and with the other officers called a special meeting of the district to vote $5000 in bonds of the district, no request signed by five legal voters of the district having been presented for that purpose, and no notice of the election being given. *Held*, That bonds thus issued were void even in the hands of an innocent purchaser.

ORIGINAL application for mandamus.

*Brown & Marshall*, for relator.

*Kaley Brothers*, for respondent.

MAXWELL, CH. J.

This is an application on notice for a peremptory writ of mandamus to compel the levy of a tax to pay certain bonds alleged to have been issued by school

district No. 9 of Nuckolls county. The application states "that on the second day of January, 1873, and for more than sixty days prior thereto, school district No. 9, in the county of Nuckolls, in the state of Nebraska, was duly organized under the laws of said state, and comprised the following described tract or territory, to-wit: All of township one, range six west of the 6th P. M.; and also sections 19, 20, 21, 28, 29, 30, 31, 32, and 33, in township one, range five west of 6th P. M., in said county of Nuckolls. That being so organized and composed, the said school district number nine did, on the second day of January, 1873, due and legal notice of the time and place having been previously given, and in accordance with the statute in such case made and provided, vote and issue the bonds of said district in the sum of $5000 for the purpose of building and furnishing a school-house in said district. It is also alleged that "upon the seventh day of December, 1872, the school board of said school district of the county and state aforesaid submitted to the electors of said district in manner prescribed by law, the following proposition: "Shall school district number nine, in the county of Nuckolls and state of Nebraska, issue the bonds of said district in amount of five thousand dollars," which said proposition, upon the second day of January, 1873, at a special meeting, was decided in the affirmative by a majority of the electors of said school district present at said special meeting. In accordance therewith the school district board of said district have entered the same upon their records, given due notice of the adoption of said proposition, and executed the bonds here issued; and your relator alleges the facts to be that said bonds were in all respects executed in the manner required by law," etc. These allegations are denied in the answer.

37

It appears from the testimony that on the twenty-seventh day of October, 1872, one R. N. Walton presented a petition to the county superintendent of public instruction of Nuckolls county for the formation of a school district, comprising the territory above described. This petition purported to be signed by George Fuller, R. N. Walton, S. Mason, and J. Chiles. It is clearly shown that Fuller, Walton, and Mason were at that time residents of the state of Kansas, and Chiles testifies that he neither signed the petition nor authorized any one to sign his name to the same. On the thirty-first of that month the county superintendent made an order forming the district and directing Walton to notify the electors. There were but three children of school age in the district at that time. There is no record of the proceedings, but one of the witnesses who was present testifies that the election was held in the following manner: "Walton says to Fuller we will call Crosby moderator. Walton says to George Fuller, you will be the director; and then Fuller says to Walton, you will have to be treasurer."

The officers thus elected issued the bonds in question. As no objection was made to these officers, and no steps taken to oust them from their positions, and the organization of the district having continued until the present time, their official acts within the scope of their authority as to third persons are valid and binding on the district. The question to be determined, therefore, is, did such officers, or any one of them, have authority to call a special meeting in said district for the purpose of voting the bonds in question?

Section 20 of "an act to establish a system of public instruction for the State of Nebraska," approved February 15, 1869 (Gen. Stat., 964), provides that special meetings may be called by the district board, or any one of them, *on the written request of any five legal*

*voters* of the district, by giving the notice required in the next succeeding section; and in all notices of special meetings, the object of the meeting shall be stated.

Section 30, as it then stood, provides that "any school district shall have power and authority to borrow money to pay for the sites for school-houses, and to erect buildings thereon, and to furnish the same, by a vote of the qualified voters of such district present at any annual meeting or special meeting. *Provided*, that a special meeting for such purpose shall be upon notice given by the director of such district at least twenty days prior to the day of such meeting, and that the whole debt of any such district at any one time for money thus borrowed shall not exceed five thousand dollars."

Section 23 provides that every inhabitant, at the age of twenty-one years, residing in the district, and liable to pay a school tax therein, shall be entitled to vote at any district meeting.

The word "inhabitant" is here used in the same sense as the word "resident" in the act "to provide a general election law," to-wit: "a person twenty-one years of age who has resided in the state at least six months, in the county not less than forty days, and in the school district at least ten days." We have no record of this so-called request, to call a special meeting, before us. We know not by whom it was signed, or whether signed at all or not, but the testimony clearly shows that there were but three legal voters in the district at the time this written request is said to have been presented to the district board, and two of those voters did not sign the same. Under the law then in existence it was necessary—a condition precedent to the right of the school district board, or any member of it, to call a special meeting, that such written request, signed by five legal voters of the district, should be presented

to the board, or one of its members. And a meeting called without such request could have no legal existence. The so-called election, therefore, was an absolute nullity. But said election is void for another reason, viz.: that no notice thereof was given.

Ferdinand Riddle testified as to the notice as follows: "Walton gave me one to stick up on a tree close to where I lived. He gave me tacks to tack it up, and told me to *tack it up tight*—not to leave it, but tear it down so no one else should see it, so that if I got into trouble about it 'you could swear that you stuck it up.' I stuck the notice up and went down there the next morning at daylight and it was gone. He mistrusted me, I suppose, and sent some one to tear it down. I went there because I expected he would tear it down." This testimony is not denied, and there is no proof whatever showing that notices were posted up.

In the case of *Harding v. R. R. I. & St. L. R. R. Co.*, 65 Ill., 90, it was held that the omission to give notice of the election for thirty days was fatal to the rightful exercise of the power to issue bonds. The court say: "If any general or special statute which controlled the election required the publication or posting of a notice for thirty days prior to the holding of the election, and this was not done, then the election was invalid, and the expression of the will of the voters thus obtained conferred no power on the board of supervisors either to make the subscription or issue the bonds. Such municipalities are not created with the view to engage in commerce, or to aid in the construction of railways, but for governmental purposes only. When they exercise the functions given by the statutes under consideration, the powers granted must not only be clearly conferred but strictly pursued. * * *

These principles have been so elaborately discussed

and fully settled by this court that we need only refer to some of the cases: *The People v. Tazewell County*, 22 Ill., 147. *Fulton County v. The Mississippi & Wabash R. R. Co.*, 21 Ill., 373. *Supervisors of Schuyler County v. The People*, 25 Ill., 181. *Supervisors of Hancock County v. Clark*, 27 Id., 305. *Marshall County v. Cook*, 38 Id., 44. *Wiley v. The Town of Brimfield*, 59 Id., 306."

In the case from which the above quotation is made, an election was called and held by lawful authority, and a majority of the votes cast were in favor of bonds, but the notice had not been published for the length of time required by statute. The bonds in that case were afterwards held to be valid by the supreme court of the United States, Miller, Field, and Harlan dissenting. See *County of Warren v. Marcy*, 7 Otto, 96. The court say: "The supreme court of Illinois decided that the provisions of the act of March 4 were binding, and that the election was void for want of such published notice of thirty days. * * * As the election was invalid for want of sufficient notice, there was no power to make the subscription, and none was conferred by the vote to issue the bonds."

If we accept this as a true construction of these statutes, the question then arises whether, the bonds having been issued and acquired under the circumstances shown by the special findings of the circuit court, the defendant in error is entitled to recover. Is the county bound to pay the coupons in question to one who purchased them for value before maturity, and without any actual knowledge of the facts relied on to invalidate them, or of the pendency of the suit brought to have the proceedings declared void? This involves two questions: *First*, Are the bonds so absolutely void, as against the county, as to be invalid under all circumstances, even in the hands of a *bona fide* holder for value? *Second*, If not, was the commencement and

pendency of the suit for having the proceedings of the supervisors declared void, and preventing the issue of the bonds, such notice to all persons of their invalidity as to defeat the title of a purchaser having no actual notice of the suit or of the objection to the bonds? The first question is to be viewed in the light of the former decisions of this court. We have substantially held that if a municipal body has *lawful power* to issue bonds or other negotiable securities, dependent only upon the adoption of certain preliminary proceedings, such as a popular election of the constituent body, the holder in good faith has a right to assume that such preliminary proceedings have taken place, if the fact be certified on the bonds themselves by the authorities whose primary duty it is to ascertain it."

This case is relied on by the relator, it being admitted that she is a *bona fide* purchaser of the bonds in question. In that case the board of supervisors of Warren county had express authority to submit to the voters of that county the question of issuing bonds, and in pursuance of that authority did submit the question to said voters, and a majority of the votes cast were in favor of bonds, which were issued and passed into the hands of a *bona fide* purchaser. The decision, as we understand it, merely holds that there having been authority to submit the question, and an election having been held in pursuance thereof, at which a majority of the votes cast were in favor of bonds, that such recital in the bond is sufficient to justify a *bona fide* purchaser in relying thereon, and as against him, irregularities in the *election* cannot be set up to defeat a recovery. But this principle can have no effect where no power exists to call an election, or where an election is called and held surreptitiously and without notice. In such case there is no lawful power to issue bonds, because the corporation has not conferred it,

and bonds if issued are not the bonds of the corporation, and it cannot be bound by the recitals therein. No recital in a bond is binding on the corporation issuing the same unless authorized by statute and the requisite vote of the electors of such corporation. A school district not being engaged in the business of issuing commercial paper, it is no part of the ordinary duties of its officers to issue bonds in the name of the district for the purpose of borrowing money. When, in pursuance of legislative authority, and a vote of the electors of the district had after due notice, such district authorizes the issue of such bonds, its officers are then invested with power for that purpose, and not before. Suppose the owner of an estate by written agreement should employ an agent to 'manage the same, and the agreement should contain a provision that upon receiving a power of attorney to that effect from his principal the agent could sell and convey the estate—could the agent before receiving such power of attorney sell and convey the estate, by reciting in the deed that he had authority to convey? No one will contend that he could, yet the officers of a school district are the mere general agents of the district, to take care of its property and have the care and management of the school. They cannot issue bonds binding on the district unless authorized by law and a majority of the legal votes cast in the mode required by law. In other words, the statute authorizing and the majority of legal votes cast in favor of bonds become the power of attorney of the officers, by which they have authority to issue the same. But it may be said that the bonds being negotiable and having passed into the hands of *bona fide* purchasers for value, the district is bound by the recitals therein. It is a sufficient answer to this objection to say that while *bona fide* purchasers are protected against equities between the parties, they are

not protected against a want of power to execute. If no power existed to issue the bonds they are mere nullities, no matter what the recitals therein.

In the case at bar the testimony clearly shows that certain citizens of Kansas procured the organization of the school district in question, and elected one of their number to the office of director, and one treasurer of said district; that without request of the electors of the district, said officers called a special meeting of the voters of the district for the purpose of voting bonds, but without giving notice of the same declared that the voters of the district had authorized them to issue five thousand dollars in bonds. None of the steps required by the statute were taken by said officers to justify them in issuing said bonds, and being issued without authority they are absolutely null and void, even in the hands of a *bona fide* purchaser. Nor does the fact that the director and moderator brought suit against Walton, the absconding treasurer, for the value of the bonds, breathe life into them. It follows that the writ must be denied.

WRIT DENIED.