THE STATE OF NEBRASKA, EX REL. JOHN F. KIMBALL,
  v. SCHOOL DISTRICT NO. 4 OF ADAMS COUNTY.

1.  **School District Bonds.** Where a special meeting of the electors of a school district was held in pursuance of the written request of five residents and voters of the district, and bonds were voted, issued, and sold and the avails used by the district, *Held*, That on an application for a mandamus to compel the officers of the district to report the amount of the debt, the court will not inquire into the qualifications of the persons signing the request.

2.  ———: QUALIFICATIONS OF VOTERS. Where a special election was held in a school district for the purpose of voting bonds to erect and furnish a school-house therein, and it appeared that the election was held in good faith, in pursuance of notice, by *bona fide* residents of the district, and the bonds having been declared carried, and were thereafter issued and sold, and the proceeds used by the district, *Held*, That the court in a collateral proceeding will not inquire into the qualifications of some of the voters at said election,

3.  ———: CONSTRUCTION OF STATUTE. The power given to school districts by section 30 of the act of 1869 to "borrow money" necessarily carries with it the authority to determine the time of payment and to issue bonds or other evidence of indebtedness therefor.

4.  ———; ———. The word "borrow," as used in the statute means power to make a contract for the use of money.

ORIGINAL application for mandamus.

*S. J. Tuttle*, for relator.

*T. D. Scofield*, for respondents.

MAXWELL, J.

The relator, in his application for a writ of mandamus, alleges among other things that School District No. 4 of Adams county, in the state of Nebraska, is duly organized and existing under the laws of the state, and was organ-

JULY TERM, 1882.          83

The State, ex rel. Kimball, v. School District No. 4.

ized as follows: That on the sixth day of January, A.D. 1872, the superintendent of public instruction of said county delivered to L. G. King, a taxable inhabitant of said district, a notice in writing of the formation of the same, giving the boundaries thereof, and naming therein the twentieth day of January of that year, and also designating the time and place of holding the first meeting of electors in said district; and also in said notice directed the said L. G. King to notify every qualified voter in said district, either personally or by leaving a written notice at his place of residence, of the time and place of holding said meeting at least five days prior to the time of holding the same; that the said L. G. King, as required by said notice, did so notify the voters in said district and endorsed on said notice a statement in writing showing such notification, and delivered the notice with the endorsement thereon to the person chosen chairman of said meeting; that at said meeting so held as aforesaid, and at the time and place mentioned in said notice and pursuant thereto, Charles G. Wilson was chosen director, Charles Bird moderator, and Benjamin F. Noll treasurer of said district, who within ten days thereafter filed their several acceptances in writing of said several offices; that subsequently, upon the written request of five electors of said district, directed to the said school district officers requesting a special meeting to be called of the electors of said district for the purpose of voting upon a proposition to borrow money for the purpose of building and furnishing a school-house in said district, said officers did call a meeting for the purpose aforesaid, and caused to be given due notice of the object of said meeting and the time and place of holding the same by posting up notices thereof in three of the most public places in said district, said notices particularly stating the object of said meeting and the time and place of holding the same; that at the time and place therein stated came the electors of said district, and the whole

thereof, and then and there resolved by a vote, then and there had, to borrow the sum of fifteen hundred dollars for the purpose of building and furnishing a school-house for said district, and authorized and directed said officers to issue and place on the market for sale the bonds described in the application; that on the tenth day of September next thereafter, pursuant to said direction and authorization, the said officers did issue the bonds of said district, the same being two bonds, each for the sum of five hundred dollars, dated September 10th, 1872, and to become due September 10th, 1877, and to draw interest at the rate of ten per cent per annum, payable semi-annually, and for which coupons were attached thereto and still remain, except those maturing the first and second years, which have been paid by said district; that said bonds recited among other things on their face that they were issued for the purpose of building and furnishing a school-house in said district, and so issued pursuant to an act of the legislature of the state of Nebraska, approved February 15th, 1869, and acts amendatory of and supplemental thereto; that said bonds were signed by Charles G. Wilson, director, Charles Bird, moderator, and Benjamin F. Noll, treasurer, and by them placed upon the market and sold, and the proceeds derived therefrom used for the purpose of building and furnishing a school-house in said district; that the officers of said district have often been requested to pay the same, but have refused, and will not take any steps or measures for the payment of said indebtedness. The prayer is to require the officers of said district to report the amount of said bonded indebtedness to the county clerk, and to require the county commissioners to levy the necessary taxes to pay the same. To this application the defendant has interposed a general denial of each and every allegation therein contained, and has specifically denied each one of the same.

When a defendant controverts all the facts stated in

a pleading he may do so by a general denial. He He then denies the truth of all the allegations stated in the pleading. Does it add any force to this denial to again deny specifically the truth of these allegations? That it does not will readily be seen. A general denial puts in issue the truth of all the allegations denied, and imposes the burden of proof upon the party making the allegations; and special denials require no additional proof to be given of those facts. Special denials, therefore, are superfluous in such cases, and a party should be required to elect between a general and special denial, and should not be permitted to cumber the record with both. But no objection is made on behalf of the relator upon this ground, and it is therefore waived.

The questions presented by the record are:

*First.* Was the school district in question duly organized in January, 1872?

*Second.* Did five legal voters of said district make a request in writing for a special school meeting in said district for the purpose of voting upon the question of borrowing money for said district as stated in the application?

*Third.* Did a majority of all the qualified voters at said meeting authorize said school board to issue and sell the bonds and coupons in question?

*Fourth.* Were the officers of said district authorized under the statute in force at that time to issue and sell said bonds?

The testimony shows that the school district in question was organized in the winter or early spring of 1872, and that that organization has continued to the present time. It also appears that about July, 1872, one C. G. Wilson was appointed by the county superintendent director of said district, and accepted said office, and exercised the duties of the same, and that one Charles Bird was moderator, but the office of treasurer seems to have been vacant. That the district in question was organized before the special

meeting was called to vote upon the question of borrowing money we think is clearly established.

*Second.* It is clearly proved that a written request, signed by five persons reputed to be legal voters of said district, was presented to said director, requesting him to call a special meeting of the voters of said district for the purpose of borrowing money to erect and furnish a schoolhouse therein; and that in pursuance of said request said director called a special meeting, and posted notices of the same for at least twenty days prior thereto, in which notices the object of the meeting was stated. Quite an effort has been made on behalf of the defendant to show that some of those signing the request had not been residing in the district a sufficient length of time to make them legal voters therein? Whatever we might hold as to the qualifications of such persons in a direct proceeding to annul their action, or where it was clear that the parties signing the request, and voting at the meeting which they were instrumental in calling, were not residents of the district, but that the whole proceeding was a fraudulent device to issue bonds, yet where the proceedings have been conducted in good faith, and a request, properly signed by the requisite number, has been acted upon by the officer or officers upon whom the law imposes the duty of calling such meeting, and the meeting has been held and the object of the request endorsed by the legal voters of the district, we will not in a collateral proceeding enquire whether all the persons signing said request had resided in the district a sufficient length of time to entitle them to vote therein or not. If they had not, any taxpayer of the district could enjoin the issuing of bonds, because unauthorized; but after the meeting has been held in pursuance of the notice, the bonds issued and sold, and the district has received the avails, it is too late to raise the objection.

In the case of the *State v. School District No. 9 of Nuckolls Co.*, 10 Neb., 544, there were but three legal vo-

ters in the district at the time the request was made, and two of these did not sign it, and it was held that there was no authority to call a special meeting for the purpose of voting bonds; in other words, that a request, signed by five legal voters of the district, is a condition precedent to the right of an officer to call a special meeting. And we adhere to that decision, but it has no application to this case. Here the request was properly signed by parties who were residents and regarded as legal voters in the district, and as no objection to their qualification was made then or since until the district is called upon to pay the bonds issued by it to erect a school-house, we think the objection is unavailing.

*Third.* It is very clearly proved that the election was participated in by all or nearly all of the electors of the district. A number of those voting had homesteads in that district, and some of them reside there still. The meeting was properly called, the notices properly given, and the election was legal. Those permitted to vote at such an election are presumed to be legal voters, and the court will not, in a collateral proceeding after the result is declared, and the district has received the benefits derived from such vote, enquire into the qualifications of the persons voting thereat. In the case of the *County of Warren v. March,* 7 Otto, 96, the supreme court of the United States states the rule as follows: "If a municipal body has lawful power to issue bonds or other negotiable securities dependent only upon the adoption of certain preliminary proceedings, such as a popular election of the constituent body, the holder in good faith has a right to assume that such preliminary proceedings have taken place, if the fact be certified on the bonds themselves by the authorities whose primary duty it is to ascertain it." This would not authorize a body not authorized by the requisite vote to issue bonds; but where an election is legally held and the authority given, it is not open to collateral attack. But the power to issue bonds is

a proceeding under a special power, and the authority must actually exist in order that recitals in the instrument may be binding. There is no doubt that a majority of all the votes cast at the election in question was in favor of borrowing money and issuing bonds.

*Fourth.* Sec. 30 of "An act to establish a system of public instruction for the State of Nebraska," approved Feb. 15th, 1869, was as follows: "Any school district shall have power and authority to borrow money to pay for the sites for school-houses, and to erect buildings thereon, and to furnish the same, by a vote of a majority of the qualified voters of said district present at any annual or special meeting: *Provided,* that a special meeting for such purpose shall be upon a notice given by the director of such district at least twenty days prior to the day of such meeting, and that the whole debt of any such district at any one time for money thus borrowed shall not exceed five thousand dollars."

Among the definitions of the word "borrow" given by Webster, are: 1—"To take or receive from another on trust with the intention returning or giving an equivalent for." 2—"To take from another for one's own use; to adopt from a foreign service; to appropriate; to assume." The word is often used in the sense of returning the thing borrowed in specie, as to borrow a book, or any other thing to be returned again. But it is evident that where money is borrowed the identical money loaned is not to be returned, because if this was so, the borrower would derive no benefit from the loan. In the broad sense of the term it means a contract for the use of money, and this is the sense in which the word is used in the statute. School districts, therefore, were authorized to make contracts for the use of money. The power to borrow necessarily implies authority to determine the time of payment and the character of the evidence of indebtedness that will be issued, whether in the form of notes or bonds payable in the future. The fact

that the bonds were sold on the market, instead of being given to the person furnishing the money, does not make them illegal. The object of the law was to enable school districts to raise means to build school-houses therein. This being the object it was to be attained in the best practicable method. These districts, many of them on the frontier, with but little taxable property therein, and no capital to be invested in loans, would have been unable for years to have effected a loan unless they had pursued the course adopted in this case, namely, issued their bonds. The policy of authorizing school districts to borrow money may perhaps be questioned; but so long as the laws grant the authority, and districts thereby obtain the necessary means to erect school-houses, common honesty requires its repayment.

In the case of the appeal of *The Phila. Reading R. R. Co.*, 13 Reporter, 475, the supreme court of Penn. held that the legal signification of the word "borrow" did not necessarily imply an undertaking to return the sum or thing borrowed.

In the case of the *E., I. & C. R. R. Co., v. Evansville*, 15 Ind., 395, it was held that where the city was expressly authorized to borrow money to pay for stock subscribed, the power to determine the time of payment and to issue bonds and other evidences of indebtedness was necessarily implied. See also Dillon on Mun. Cor., Sec. 84.

A peremptory writ is awarded against the officers of the school district as prayed; but as the county commissioners do not appear to be in default, the writ as to them is denied.

JUDGMENT ACCORDINGLY.