THE STATE OF NEBRASKA, EX REL. THOMAS HOPPER, V. SCHOOL DISTRICT NO. 13, IN WEBSTER COUNTY, ET AL.

1. **School District Bonds:** IRREGULARITIES IN ORGANIZATION OF DISTRICT. Irregularities in the organization of a school district are no defense to an application for a writ of mandamus to compel the payment of its bonds. *State, &c., v. School District No. 24, ante* p. 78.

JULY TERM, 1882. 467

State, ex rel. Hopper, v. School District No. 13.

2. ————: ELECTION.. An election was held for the purpose of voting school district bonds to raise money to build a school house. Nineteen voters, being all of the male inhabitants of the district over the age of twenty-one years, attended said election and voted, except seven, some of whom were absent in other states and some in a distant part of this state, all of whom had been absent for a period of four months, and none of whom were expected to return within less than a month after said election; and one who knew of said election but did not attend for the reason that he was about to remove from said district In an application for a writ of mandamus to compel the payment of bonds voted at said election, *Held*, That this court would not inquire into the alleged want of a request signed by at least five electors for the calling of such election, or whether the notice therefor was published for the length of time required by the statute.

ORIGINAL action of mandamus to compel the levy of a tax to pay school district bonds.

*Mason & Whedon,* for the relator, cited: *People v. Newberry,* 87 Ill., 41. *Trumbo v. The People,* 75 Id., 561. *School District v. Cowee,* 9 Neb., 53. *Dean v. Gleason,* 16 Wis., 18. *Ellis v. Karl,* 7 Neb., 389. *Fisher v. S. D. No. 17,* 4 Cush., 494. *Mills v. Gleason,* 11 Wis., 493. *Bank v. Chillicothe,* 7 Ohio, 354.

*J. S. Gilham,* for respondent, cited : *School D. v. Perkins,* 21 Kan., 534. *School District v. Thompson,* 4 Minn., 280. *Burgess v. S. D.,* 100 Mass., 132. *Jordand v. State,* 38 Wis., 164. *Pratt v. Swanston,* 15 Vermont, 147.. *Zottmein v. San Francisco,* 20 Cal., 96. *Taylor v. Dist.,* 26 Ia., 281. *Taylor v. Wayne,* 25 Ia., 447. *Shepherd v. Richland,* 32 Ia., 595.

BY THE COURT.

The respondents in this case seek to deny the existence of said school district as a body politic and corporate at the date of the voting and issuing of the bonds for the payment of which this suit is brought.

In the case of the *State, ex rel. Gregory, v. S. D., 24, ante* p. 78, this court by the C. J., say: "It must be conceded that considerable irregularity attended the organization of the district, but there is nothing to show that there was any bad faith on the part of any one connected therewith. \* \* \* But we are of the opinion that this irregularity is now of no consequence. Nobody objected at the time to the course pursued; all seemed to have been satisfied, and objection now comes too late. As a body politic this school district had its inception in these irregular steps, and has continued an existence then begun until now. Having given to the district its life, the effectiveness of these steps ought not now, after the lapse of over nine years, to be called in question." These views, which are adhered to, apply with equal force to the case at bar. But there is one point urged against said organization upon which considerable testimony was taken, and which perhaps deserves more than a passing notice. The law then in force, after providing for the election of officers at the first meeting after the formation of a new district, their official designations, and terms of office, provides that "within ten days after their election, these several officers shall file with the director a written acceptance of the offices to which they shall have been respectively elected," etc., and section 13 provides as follows: "Every such school district shall be deemed duly organized when any two of the officers elected at the first meeting shall have filed their acceptance as aforesaid;" and section 14 provides that: "In case the inhabitants of any district shall fail to organize the same in pursuance of such notice as aforesaid, the said county superintendent shall give a new notice in the manner hereinbefore provided, and the same proceedings shall be had thereon as if no previous notice had been delivered." Gen. Statutes, 963. According to the record the office of director was accepted in writing by Simeon Brown, and that of moderator in like manner by M. C.

Williamson, on the twenty-eighth day of September, 1872, within ten days after their election at said first meeting, so that according to the record, the organization of said district was complete on the twenty-eighth day of September, 1872. The record is in each instance over the undisputed signature of the officer thus accepting. But the deposition of M. C. Williamson is offered to impeach this record, in which he testifies that he did not in point of fact accept the office of moderator of said district until the third day of February, 1873. If this be accepted as true, then the district was not legally organized. But can Mr. Williamson's deposition be now received to discredit his official record made ten years ago? We think not. He was elected to an office, not of emolument or great honor, but one of onerous and thankless duties, and calling for a high degree of personal integrity of the incumbent. The law made it his duty to accept the same in writing within ten days after his election, and made important results to depend upon such acceptance. Upon the first occasion of his being called upon to act in an official capacity, an interested party, examining in the proper place, would have found the record which he was required to make as the crowning step in the organization of a corporation designed to be perpetual. Now, after this corporation has occupied a place in the educational system of the state for a period of ten years, during which it has enjoyed all the rights and incurred many of the obligations proper to the purposes of its existence, it is proposed by the testimony of this man to put the ban of illegitimacy upon it and all its acts. It is only necessary to state this proposition to show that it is inadmissible.

The proof shows that the first act of the officers of the newly formed district was to complete their own organization by the appointment of a treasurer, the treasurer elected at the first meeting having failed to accept. They went on to call and hold an election upon the question of borrow-

ing money to build a school house, which, being completed sometime in the summer of 1873, has since been used by the said district for all the legitimate purposes of a school house, and has been, and is, the only house owned or used by the said school district. Said school district has hired teachers, levied taxes, held its annual school meetings, and for nearly ten years continued to do and enjoy every act, right, and privilege that appertain to any school district under the laws of this state, and all of this based upon the organization which is here called in question. Certainly the district as a corporation, as well as all of its officers and inhabitants, are now estopped to question the legality of its existence.

The testimony does not show that any request signed by five legal voters of the district was made for the calling of the special meeting at which the said bonds were voted, nor that notice of said special meeting was given in all respects as required by statute, but it does show that the proposed meeting and its purposes was known to every voter then in the district, and what is quite unusual, every one of them (with possibly one exception) attended the meeting and voted for or against the issuing of the bonds. The object of the provision requiring a request signed by at least five voters to be presented before a special meeting may be called, is to prevent the school officers calling such meeting when there is no desire for it or sentiment in its favor in the district, and the object of the provision requiring notice is that no meeting shall be held without all the persons entitled to participate therein having a fair opportunity to know the time and place thereof in time to enable them to attend such meeting. The statute provides, sec. 22, Gen. Stat., p. 965, that: "No district meeting shall be deemed illegal for want of due notice, unless it shall appear that the omission to give such notice was willful and fraudulent." Special meetings to provide for the location or removal of sites for school houses are excepted

from this liberal provision, but such meetings for the purpose of voting bonds or voting on the question of borrowing money are not. It does not appear to this court that the failure to give the statutory notice in this case—if there was such failure—was either willful or fraudulent. However, it must be admitted that the testimony on the part of the respondent goes some length towards developing a motive for fraud on the part of the friends of the measure.

It seems that of the nineteen alleged legal voters of the district seven were young men, without families, who had come to the state from states further east, or from the eastern part of the state to Webster county in the year 1872, had taken up homesteads or pre-emptions within the bounds of this district, and had gone back to their former homes and occupations to spend the winter and early spring, which the very liberal interpretation of the homestead and pre-emption laws then prevailing enabled them to do. It is assumed that all of these were opposed to bonding the district, and it is urged that the calling and holding of said election by the old and permanent inhabitants during such absence is evidence of fraud. But there is an essential element of fraud wanting in this branch of the case even as presented by the respondent. It is not claimed that the absence of these seven persons from the district was in the remotest degree attributable to any act or procurement of any of those who called this election or voted to issue these bonds. And it will scarcely be contended that a minority of one-third can control the acts of the majority by absenting themselves for such period as may suit their convenience. From the testimony it may appear that had all these absentees been present at the meeting and voted, the proposition to issue the bonds in question would probably have been defeated. But we know of no authority for counting votes never cast, and there can be none except where voters are kept from the election or ballot box by violence or fraud.

In addition to authorities cited by counsel, see *State, ex rel. Gregory, v. S. D. 24*, ante p. 78, and *State, ex rel. Kimball, v. S. D. 4*, ante p. 82.

PEREMPTORY WRIT ALLOWED.