STATE, EX REL. JUSTIN A. WILCOX, V. HENRY CRAB-
TREE ET AL.

[FILED JUNE 30, 1892.]

1. **Referees:** FINDINGS: REVIEW. The report of a referee upon
questions of fact has the same effect as the verdict of a jury, and
will not be set aside as being against the weight of evidence un-
less it is clearly wrong.

2. **County Seat:** RELOCATION: PETITION: MANDAMUS. A peti-
tion was presented to the board of county commissioners of Red
Willow county, purporting to be signed by 1,541 resident electors
of the county, requesting said board to call a special election for
the relocation of the county seat, which petition contained a
statement of all the matters required to be set out therein by
section 1, article 3, chapter 17, Compiled Statutes. Subsequently,
during the pendency of said petition, a remonstrance was filed
with said board against the calling of an election, and also a
petition signed by 285 of the persons who had previously signed
the petition requesting that their names be stricken therefrom.
After deducting all who were disqualified petitioners and those
who had withdrawn their names, the petition was signed by
1,106 resident electors of said county, which exceeded in num-
ber three-fifths of all the votes cast in said county at the pre-
ceding general election. The county board denied the petition.
*Held,* That the duty to call the election being enjoined by law,
*mandamus* will lie to enforce the performance of the same.

3. ———: ———: ———: COSTS. The relator is entitled to costs
against the county.

ORIGINAL application for *mandamus.*

*J. S. Le Hew,* and *Sidney Dodge,* for relator, cited:
Angell & Ames, Corp., 239, 679; *People v. Com'rs,* 4
Neb., 157; *Bouton v. Supervisors,* 84 Ill., 384; *State v.
McMillan,* 8 Jones [N. Car.], 174; *Com'rs v. Batty,* 10
Neb., 176.

*R. M. Snavely,* for respondent, cited, contending that
*mandamus* would not lie: *Howland v. Eldredge,* 43 N. Y.,

State, ex rel. Wilcox, v. Crabtree.

457; *People v. Brennan*, 39 Barb. [N. Y.], 651; *Seymour v. Ely*, 37 Conn., 103; *State v. Nemaha Co.*, 10 Neb., 33; *State v. Nelson*, 21 Id., 572; *Dixon v. Judge*, 4 Mo., 286; *Dane v. Derby*, 89 Am. Dec. [Me.], 729, and note; *State v. McCrillus*, 4 Kan., 214; *State v. Supervisors*, 29 Wis., 79; *Doster v. Howe*, 28 Kan., 353; *Cushing v. Stoughton*, 60 Mass., 389; *Nelson v. Milford*, 7 Pick. [Mass.], 18; *Simmons v. Hanover*, 23 Id., 188; *Bancroft v. Linfield*, 18 Id., 556; *Boone Co. v. Armstrong*, 23 Neb., 766; *State v. Clarey*, 25 Id., 403.

*Fritz Westermann*, for M. E. Wheeler, intervenor, cited, contending that the county was liable for costs: *Tatlock v. Louisa Co.*, 46 Ia., 138; *Jordan v. Osceola Co.*, 59 Id., 388; *Bouton v. Supervisors*, 84 Ill., 384 *Cushing v. Stoughton*, 60 Mass., 389; *Doster v. Howe*, 28 Kan., 355; *Thomas v. Wilton*, 40 O. St., 516; *Windburn v. Litchfield*, 22 Conn., 226; *People v. Stocking*, 50 Barb. [N. Y.], 573; *Stanton Co. v. Madison Co.*, 10 Neb., 308.

NORVAL, J.

This is an original application to this court for a peremptory *mandamus* to compel the board of county commissioners of Red Willow county to call a special election for the purpose of voting on the question of the location of the county seat of said county. Upon issue being joined the cause was referred to J. B. Cessna, Esq., to take the proofs and report the same to the court, with his findings of fact. The referee, after hearing the evidence, has made and filed his report, which consists of fifty-one special findings, and returned therewith a transcript of the testimony, which contains over 2,000 closely type-written pages, including exhibits. Numerous exceptions were filed to the findings of the referee. Subsequently, but before the submission of the case to the court, the board of county commissioners filed an answer withdrawing all op-

position to the granting of the writ, and asking to be re-lieved from the payment of costs.

It appears from the petition, and the referee so found, that at the general election held in Red Willow county on the 5th day of November, 1889, there were cast 1,589 votes, and no more; that on the 25th day of April, 1890, there was filed with and presented to the board of county commissioners of said county a petition purporting to be signed by 1,541 resident electors of said county, praying said board to call a special election for the purpose of submit-ting to the electors of the county the question of relocat-ing the county seat; that in addition to the names of the petitioners the petition contained, and had set opposite their respective names, the age, the section, the township, and range on which, or the city in which, the petitioner resided, and the term of his residence in the county. On the same day a like petition was filed with said board purporting to be signed by twelve other resident electors of said county. Prior to the filing of the petition last named a remonstrance was filed with the said board protesting against the calling of the election. Subsequently other petitions were filed with said board, signed by 285 of the persons who had previously signed the original petition, requesting that their names be stricken off of said petition and protesting against the calling of the election. On April 30, 1890, but after the presentation to the board of said petitions and remon-strances, another petition, of the same tenor and effect as the original, was filed with said county commissioners, purport-ing to be signed by twenty-seven other resident electors of the county. The original petition presented to the county board was signed by 1,106 resident electors of said county, or more than three-fifths of the qualified voters of the county, according to the returns of votes cast at the preceding general election, after deducting those who had withdrawn their names from the petition. The petition and remon-strance were pending before the county commissioners sev-

eral days, and, finally, on May 6, 1890, without hearing any testimony, a majority of the county board refused to submit to a vote of the people of the county the proposition to relocate the county seat.

The referee finds, in substance, that the county commissioners refused to hear any testimony as to the qualifications of the petitioners or the genuineness of their signatures, which finding is excepted to, as not being supported by the evidence. It is the only objection urged against the report in the brief of the respondents. Considerable testimony was taken upon this branch of the case, which was of the most conflicting character. The record discloses that the county board, at the meeting on April 30, 1890, adopted a motion to the effect that the petition for relocation *prima facie* proved itself, and that the burden of proof was upon the remonstrators. No proof being offered attacking the petition, the county board proceeded to examine the petition and remonstrance, to ascertain therefrom whether the petition was signed by a sufficient number of qualified electors to warrant the calling of an election. They made out two lists of names of the petitioners, one containing those who were personally known to the board as qualified voters, and the other the names of those who were not so known to them. Upon the first list were placed 491 names, and upon the other 865. On May 6, 1890, the board having met to further investigate the matter, passed a motion requiring the petitioners to introduce their proof on the sufficiency of their petition.

The testimony introduced by the relator tends to show that counsel for petitioners, with several witnesses, were at the time present before the board, and that said attorneys thereupon asked permission to call witnesses to establish that the petition was signed by more than three-fifths of the legal voters residing in the county, which said request was refused. The witnesses called by respondents testified that no such request was ever made. While the testimony

is conflicting, the evidence is ample to sustain the findings
of the referee. The report of a referee upon questions of
fact has the same effect as the verdict of a jury, and will
not be set aside as being against the weight of evidence
unless it is clearly wrong. (*Brown v. O'Brien*, 4 Neb., 195;
*Cattle v. Haddax*, 14 Id., 527.)

Section 1, article 3, chapter 17, Compiled Statutes, pro-
vides: "Whenever the inhabitants of any county are desir-
ous of changing their county seat, and upon petitions
therefor being presented to the county commissioners, signed
by resident electors of said county, equal in number to
three-fifths of all the votes cast in said county at the last
general election held therein, said petition shall contain, in
addition to the names of the petitioners, the section, town-
ship, and range on which, or town or city in which, the
petitioners reside, their ages and time of residence in the
county, it shall be the duty of such board of commission-
ers to forthwith call a special election in said county for
the purpose of submitting to the qualified electors thereof
the question of the relocation of the county seat," etc.

The petition first presented to the county commissioners
in every essential particular complied with the requirements
of the above section, and contained the requisite number of
petitioners. After deducting the names of the persons who
were not qualified petitioners and those who, after signing
the petition, had subsequently signed a remonstrance against
the same, the petition contained the names of qualified pe-
titioners in excess of three-fifths of all the votes cast at the
preceding general election. It was therefore the duty of the
board under the law to have called an election and submitted
the proposition to relocate the county seat to a vote of the
people. The respondent having refused to perform a plain
statutory duty, the relator is entitled to the relief demanded.

The only question remaining to be considered is as to
costs. We think the taxable costs should go against the
county. The proceedings are against the county board,

and not the respondents as individuals. The county commissioners represent the county. They failed to perform a duty, not as individuals, but in their official capacity as representatives of Red Willow county. They employed counsel to appear for them, who filed an answer, and every step was hotly contested until just before the submission of the cause, when another answer was filed which, in effect, confesses the right of the relator to the writ. This change in the issues did not relieve the county from liability for the legal costs. Whether the commissioners are liable to the county therefor on their official bonds does not arise in the case and we express no opinion thereon. The amount of compensation of the referee, as well as the fees of the stenographers for taking and transcribing of the testimony, will be hereafter determined.

A peremptory writ of *mandamus* will issue to said respondent board commanding them, at their next session, to call a special election in said county and submit to the qualified electors thereof the question of relocation of the county seat of said county.

JUDGMENT ACCORDINGLY.

THE other judges concur.