41   593
45   201
41   593
50   624

WILLIAM FULLERTON, APPELLANT, v. SCHOOL DISTRICT OF THE CITY OF LINCOLN ET AL., APPELLEES.

FILED JUNE 26, 1894.   No. 6847.

1. **School Districts:** POWER OF BOARD TO CALL BOND ELECTION. Under the law as it stood prior to April 5, 1893, a district school board, except in cities of the metropolitan class, had no power to call an election on the question of issuing bonds for purchasing sites or erecting school houses until a petition had been presented to the board suggesting that such a vote be taken and signed by at least one-third of the qualified voters of the district. The presenting of such petition was a condition precedent to a valid election.

42

2. ———: ———: Sufficiency of Petition: Determination of by Board. Where the law requires a petition of a certain character in order to confer power upon a board to call an election for the purpose of issuing bonds or authorizing a tax, the determination of that board is not conclusive as to the sufficiency of the petition or the qualifications of the petitioners. But these subjects are open to inquiry in judicial proceedings to nullify the action, where the parties complaining have not, by acquiescence or laches, estopped themselves from contesting the question.

3. ———: ———: ———: Evidence. The phrase in section 3, subdivision 15, chapter 79, Compiled Statutes, "one-third of the qualified voters of such district," means one-third of the qualified voters of the district when the petition was presented, and what number constitutes such one-third is a judicial question to be determined upon any competent legal evidence. Neither the number of votes cast at the election held in pursuance of the petition nor the number cast at any preceding election is conclusive upon this question, but such facts are admissible, together with others of like character, as tending to prove the issue.

Appeal from the district court of Lancaster county. Heard below before Tibbets, Strode, and Hall, JJ.

The facts are stated by the commissioner.

*F. A. Boehmer* and *N. Rummons*, for appellant:

The number of signers to the request for submission of the proposition to vote bonds is less than one-third of the qualified voters of the district at date of presentation of the petition. The school district being a *quasi*-corporation, its powers are limited, and it has no authority except that given by statute, and was without authority to submit the proposition to the electors. (*School District v. Stough*, 4 Neb., 361; *Gehling v. School District*, 10 Neb., 239; Dillon, Municipal Corporations, secs. 24, 266; *Hayward v. School District*, 2 Cush. [Mass.], 419; *School District v. Atherton*, 12 Met. [Mass.], 112; *Sherwin v. Bugbee*, 17 Vt., 340; *Jordan v. School District*, 38 Me., 164; *Central*

*School Supply House v. School District,* 58 N. W. Rep. [Mich], 324.)

It is essential that a request be presented to the board, properly signed by the requisite number of voters. The board of education does not sit as a court of justice, and its finding as to the sufficiency of the petition is not conclusive. (*Sharp v. Spier,* 4 Hill [N. Y.], 76 ; *In the Matter of Sharp,* 56 N. Y., 259 ; *Henderson v. Mayor and City Council of Baltimore,* 8 Md., 360.)

*Webster, Rose & Fisherdick,* for appellees:

The object of the provision requiring the presentation of a petition to the board is to prevent school officers from calling a bond election when there is no desire for it or sentiment in its favor in the district. Accuracy in the estimate by the board of numerical sufficiency of petitioners is not jurisdictional, and error in that respect does not vitiate proceedings taken in good faith and participated in by the electoral body without objection or protest. (McCrary, Elections [3d ed.], sec. 173; *State v. School District,* 13 Neb., 470; *Kimball v. School District,* 13 Neb., 86.)

Without allegation and proof of fraud the determination of the board of education to which it was addressed is final and conclusive. There is a plain distinction between a statute requiring a fixed number and one requiring a certain proportion. One calls for no exercise of judicial function, and the other does. (Spelling, Extraordinary Relief, sec. 701; *Pierce v. Wright,* 6 Lansing [N. Y.], 306.)

*Henry E. Lewis,* also for appellees.

IRVINE, C.

The appellant, as a taxpayer of the defendant school district, brought this action, on behalf of himself and others similarly situated, against the school district and the individual members of its board of education, praying for an

injunction to restrain the defendants from registering, issuing, and selling certain bonds of the school district. The injunction was refused by the district court and the plaintiff appeals. The petition is quite long and avers many facts by way of attacking the validity of the proceedings under which it was proposed to issue the bonds. The conclusion reached upon one aspect of the case renders it unnecessary to consider the other questions. At the time the election was held whereunder the power to issue these bonds is claimed, the authority of such a school district as that in question, to-wit, one organized from an incorporated city in pursuance of section 1, subdivision 14, chapter 79, Compiled Statutes, was derived from the general provisions in regard to school district bonds, found in subdivision 15 of chapter 79. By section 1 of this subdivision the district officers of any school district were given power to issue bonds of the district for the purpose of purchasing a site for and erecting thereon a school house or school houses and furnishing the same, on the terms and conditions set forth in the succeeding sections. Section 2 provided that "no bonds shall be issued until the question has been submitted to the qualified electors of the district and two-thirds of all the qualified electors present and voting on the question shall have declared by their votes in favor of issuing the same, at an election called for the purpose, upon a notice given by the officers of the district at least twenty days prior to such election." Section 3 provided that no vote shall be ordered upon the issuance of such bonds unless a petition shall be presented to the district board, suggesting that a vote be taken for or against the issuing of such amount of bonds as might therein be asked for, which petition shall be signed by at least one third of the qualified voters of such district; provided that the board of education in any city of the metropolitan class may order a vote without a petition therefor. It is charged in the petition that while a petition was presented it was not signed by one-third of the qualified

voters of the school district. The petition is attacked for other reasons, but we shall only consider the questions arising from the averment referred to. The defendants put in issue the truth of this averment and also contest its legal sufficiency. The court made special findings in the case among which are the following:

" 5. The court further finds that a proper petition asking for the submission of a vote for the issuing of bonds was presented to the board of education of said city and that said petitions were signed by 1,846 persons, and that said number of signers is sufficient for such a request; that a copy of said petition is correctly set out in plaintiff's petition and is sufficient authority for such school board to call an election for such bonds."

" 10. The court further finds that the population of said district is about 55,000 and that there are 11,542 children of school age in said district; and that at the date when the request for submission of this election was presented to said board there were at least 9,000 qualified voters in said school district who were entitled to vote upon this bond election; that there were 7,886 male voters registered upon the registration books of said city of Lincoln at said time, and that there were at least 2,000 female voters in said district who had a right to vote upon this bond question."

The court also found that there were cast for members of the school board the number of votes set out in plaintiff's petition. The number so alleged shows an average of 4,549 for each office to be filled.

The sufficiency of the evidence upon these points is unquestioned except as to the finding of the number of qualified voters. This will be hereinafter referred to. It may be well to here state that the school district was shown to comprise the territory embraced in the city of Lincoln, with the exception of 460 acres which lay within the city, but without the school district. The district also included 7,680 acres contiguous to but not within the city, and there

was a finding that there were about 200 qualified voters of the school district who did not reside within the city. There is no finding as to the number of qualified voters of the city who were not qualified voters of the school district. If we accept the findings of fact as correct, we have but 1,876 qualified voters out of 9,000 petitioning for the election, and if these findings are supported by the proof, they must control the general statement in the fifth finding, that the number of signers was sufficient. This statement was a conclusion of law and not a finding of fact.

The questions which we conceive to be presented under this state of the record are as follows : First—Is the presenting of a petition in accordance with the statute an essential prerequisite to the calling of an election to vote bonds? Second—If so, does the board of education, in calling the election, act judicially in determining whether or not the petition was signed by the requisite number of qualified voters, and is its determination of that question conclusive against a collateral attack ? Third—If the last question be answered in the negative, how is the requisite number of qualified voters to be determined ?

1. It may be assumed that a court of equity will not interfere by injunction even for the purpose of preventing the registration or issuance of bonds at the suit of a taxpayer for mere irregularities in the proceedings not going to the jurisdiction or power of the officers making the issue, where such irregularities are not of a nature of themselves to prejudice the plaintiff's rights. If, therefore, the election was in other respects regularly called and conducted, and if it resulted in the requisite vote in favor of issuing the bonds, their issue should not be restrained because of a defect in the petition unless the presenting of a proper petition, signed by the stated proportion of electors, was a necessary step and essential to confer upon the board of education authority to call the election. The first question presented is, therefore, whether or not the presenting of a

petition complying with the law as to the number and qualifications of its signers is an essential step in order to confer upon the board the power to submit the question to vote.    We think this question must be answered in the affirmative.    All the cases under similar statutes recognize this rule.    Thus, where the statute provided that special meetings of the school district might be called by the district board, or any one of them, on the written request of five legal voters of the district, the court, in the case of *State v. School District*, 10 Neb., 544, speaking through MAXWELL, C. J., said: "It was necessary—a condition precedent to the right of the school district board, or any member of it, to call a special meeting, that such written request signed by five legal voters of the district should be presented to the board or one of its members, and a meeting called without such request could have no legal existence.    The so-called election, therefore, was an absolute nullity."    This rule was approved in *State v. School District*, 13 Neb., 82, and in *Orchard v. School District*, 14 Neb., 378.    The statute requiring, in order to submit to voters the question of relocating a county seat, that a petition for such election should be presented containing the names of persons purporting to be electors equal in numbers to three-fifths of all the votes cast in said county at the last general election, the court plainly intimated that if the question were raised in the proper manner, such a petition would be held essential. (*Ellis v. Karl*, 7 Neb., 381.) Some features of this case will be referred to hereafter. The same inference is to be drawn from *State v. Nelson*, 21 Neb., 572.

The law required county commissioners to call an election upon the question of issuing bonds in aid of works of internal improvement upon the presenting of a petition signed by not less than fifty freeholders.    The court in *State v. Babcock*, 21 Neb., 187, construing this statute, used the following language: "Under this section the authority of

the county commissioner to call a special election for the
purpose of voting precinct bonds is based upon the fact
that a petition, signed by not less than fifty freeholders of
the precinct, has been presented to the county commission-
ers, which petition shall set forth the nature of the work
contemplated, the amount of bonds sought to be voted, the
rate of interest and the time when the principal and inter-
est shall become due.   It is only upon the reception of such
a petition that the commissioners have authority to call an
election for the purpose of voting bonds in the precinct.
It is claimed, on behalf of the relator, that the section
above quoted, so far as it requires a petition signed by fifty
freeholders, to authorize the county commissioners to call
an election, is in conflict with the constitution, because it
restricts the right of suffrage, and therefore it is void.   A
county or any of its subdivisions has no inherent right to
vote bonds. (*Hamlin v. Meadville*, 6 Neb., 227; *Hallen-
beck v. Hahn*, 2 Neb., 397.)   The right, therefore, is de-
rived entirely from the statute, the terms of which must be
substantially complied with.   The effect of voting and is-
suing bonds by a precinct is to create a lien upon all the
realty of such precinct for the payment of such bonds and
interest.   It is eminently proper, therefore, that at least
fifty freeholders of such precinct should certify to the
county commissioners their desire to have such incumbrance
placed upon their property.   *   *   *   It is a condition
precedent, therefore, to the right of the commissioners to
call a precinct election for the purpose of voting bonds of
such precinct, that a petition, signed by fifty freeholders
thereof, stating the facts required by the statute, be pre-
sented to such commissioners for that purpose." So in
*Wullenwaber v. Dunigan*, 30 Neb., 877, the court said: "It
is indispensable that a petition requesting the calling of an
election must be signed by at least fifty freeholders, and
without such petition such commissioners have no jurisdic-
tion."

A distinction suggests itself, and upon a slightly different subject has been discussed by counsel, between bonds issued for municipal purposes and what are generally known as "aid bonds." It would be quite reasonable to require a greater strictness of procedure where it is sought to invoke the taxing power in aid of an enterprise wholly disconnected with the operations of government than is required for the exercise of that power for the creation of an indebtedness for the purpose of enabling the governing body to perform its functions; but if such a distinction exists, it is quite clear that it does not arise upon the question of the necessity of a petition as a foundation for the calling of an election. As stated in *State v. Babcock, supra,* and in several other cases, a county or other municipal subdivision has no inherent power to issue bonds at all. The right is derived from statute, and the effect of issuing the bonds is to create a lien for their payment on all the taxable property of the territory. It is for these reasons that it has been held that the procedure pointed out by the statute must be substantially complied with, and these reasons apply as well to bonds issued for governmental purposes as to donations. The same principle is involved where the statute requires a petition of property owners to set in motion the power of a city to improve a street, in which case it is held that where the statute requires such a petition, a petition in compliance with the statute is necessary to confer jurisdiction upon the council to make such improvement. (*Von Steen v. City of Beatrice,* 36 Neb., 421; *State v. Birkhauser,* 37 Neb., 521.) We are persuaded by the authorities cited, as well as by the current of decisions elsewhere and by a consideration of legal principles, that where the statute provides for the calling of an election upon the presenting of a petition of a certain character and by certain persons, the requirement of such a petition is not merely directory but is a condition precedent to a valid election and necessary to confer authority to call such an election.

· 2. A petition being essential to the validity of the election, the question next arises as to whether the sufficiency of the petition is a judicial question cognizable by the courts in a collateral proceeding, or whether, on the other hand, the board or officer to whom the petition is presented has jurisdiction to determine its sufficiency, and whether the determination of such board or officer is conclusive. Upon this question the authorities elsewhere are not in accord and it is not easy upon their first examination to harmonize the decisions of this court. We think, however, that when they are more closely examined our own decisions map out a safe and sound rule. In *State v. School District*, 10 Neb., 544, it was held that school district bonds were void even in the hands of an innocent purchaser where no notice of the election had been given and no request signed by five legal voters for the calling of a meeting had been presented. A meeting held without such request was said to be an absolute nullity. This was so held upon proof that there were but three legal voters in the district and that two of these did not sign the request. .In *State v. Babcock*, 21 Neb., 187, where the election had been called and the bonds voted, the court refused a *mandamus* to compel their registration where it was shown that the petition had not been signed by the requisite number of freeholders, the bonds in this case being aid bonds. In a series of cases the court has refused to permit an inquiry into the qualifications of signers of petitions after the bonds had been issued · and passed into the hands of innocent purchasers; but these cases are all based upon the distinction between the position of a taxpayer seeking relief promptly, and one who has stood by until the rights of innocent purchasers have accrued. This distinction is well stated . · by MAXWELL, J., in *Cook v. City of Beatrice*, 32 Neb., 80, as follows: " Had the action in that case been brought to enjoin the issuance of the bonds, the result might have been different, as it requires a much stronger case

to enjoin the collection of taxes for the payment of the
interest or principal of bonds issued in pursuance of ap-
parent authority, and duly registered, and which have
passed into the hands of *bona fide* purchasers, than to
enjoin the issuing of the same in the first instance, and
it is probable that the bonds in question would be
valid in the hands of innocent purchasers for full value;
but that question is not before the court. In this state
every reasonable opportunity is offered to taxpayers to
protect their rights, by enjoining the issue or registration
of illegal bonds, and unless there is a want of power to
issue the same, bonds duly issued and registered will not
be declared invalid for mere irregularity in the exercise of
power to issue such bonds. Here a taxpayer is alert, and
asks the court to restrain the issuing of the bonds for the
causes set forth, evidently fully realizing that if the bonds
were issued and passed into the hands of a *bona fide* pur-
chaser they would be valid." That this is the distinction
governing the cases referred to, and that relief was not re-
fused because of the conclusive effect of the board's deter-
mination of the sufficiency of the petition, is seen from an
inspection of the cases. *State v. School District,* 13 Neb.,
82, was an application for *mandamus* compelling the levy-
ing of a tax to pay bonds already issued. A question was
raised as to the qualifications of the five persons who had
signed the request for the meeting at which the bonds were
voted. The court used this language: "We will not in a
collateral proceeding inquire whether all the persons sign-
ing said request had resided in the district a sufficient length
of time to entitle them to vote therein or not. If they had
not, any taxpayer of the district could enjoin the issuing of
bonds, because unauthorized; but after the meeting has
been held in pursuance of the notice, the bonds issued and
sold, and the district has received the avails, it is too late
to raise the objection." The same principle controlled the
case of *State v. School District,* 13 Neb., 466. *Orchard v.*

*School District,* 14 Neb., 378, was an action upon a bond and was determined upon the same ground, the court saying, "Here was a meeting called and held by the *bona fide* residents of the district and they cannot be permitted to hold a special meeting, vote bonds and sell the same, and, after receiving the avails, say that there was an irregularity in calling the meeting." It is, therefore, apparent that the court in all the cases referred to has considered the question of the sufficiency of the petition a judicial question open to inquiry in a proper collateral proceeding, but has held parties precluded from the inquiry upon a reasonable doctrine of estoppel where they have acquiesced in the proceedings until the rights of third persons have accrued.

Counsel suggest that the cases referred to are not applicable, for the reason that both in the calling of special district meetings and in the calling of elections for aid bonds the statute requires a petition having a fixed number of signers, and not a certain proportion of voters. We can see no force in this distinction. Where a fixed number of signers is required the office of the board is then not merely to count the names but, after ascertaining that there is a sufficient number of names, the duty still remains of ascertaining whether the persons whose names are signed have the requisite qualifications. This creates a discretionary power as great as that of ascertaining whether the number of names signed represents a given proportion of the whole number of voters, and we can see no reason for permitting the board's determination of one question to be conclusive and of the other not. The only doubt which we have upon this question arises from those cases in reference to elections upon the question of relocating county seats. In *Ellis v. Karl,* 7 Neb., 381, it was held that the law gave to the county commissioners the exclusive authority to determine whether the signatures to petitions for such elections were genuine, and those of persons authorized to sign them, and that where no question was raised

before the commissioners themselves, the plaintiff was
in no situation to ask the aid of a court of equity; but
the court added that this was especially so because the
plaintiffs had rested content until three elections, in which
they had participated, were held and the result finally de-
clared.  *State v. Nemaha County*, 10 Neb., 32, and *State v.
Nelson*, 21 Neb., 572, are in the same line and rest largely
upon the proposition that a remedy existed through error
proceedings.  *Ellis v. Karl* was an action for an injunction
to restrain the removal of the county seat after the election;
while *State v. Nelson* and *State v. Nemaha County* were ap-
plications for *mandamuses* to compel the calling of an
election.  It is worthy of note that in each case the facts
as to the sufficiency of the petition were examined, and in
the last case cited the reason given for refusing the writ
was that it did not appear that the requisite number of
names was signed to the petition.  Furthermore, in *State
v. Crabtree*, 35 Neb., 106, a *mandamus* was allowed to
compel the calling of an election after an inquiry as to the
sufficiency of the petition and a determination that it was
sufficient.  Without inquiring whether the earlier cases
were sound in principle, it is sufficient to say that the dis-
tinction between proceedings to relocate a county seat,
merely as a matter of convenience to the inhabitants, and
proceedings to incur an indebtedness which, when incurred,
would constitute a lien upon all the property of the in-
habitants and require the levying of taxes for its payment,
is sufficient to account for the apparent departure of these
cases from the rules laid down in those involving the issu-
ing of bonds.  Our conclusion is that where law requires
a petition of a certain character in order to confer power
upon a board to call an election for the purpose of issuing
bonds or authorizing a tax, the determination of that board
is not conclusive as to the sufficiency of the petition or the
qualifications of the petitioners, but that these subjects are
open to inquiry in judicial proceedings to nullify the action,

where the parties have not, by acquiescence or laches, estopped themselves from contesting the question.

3. Finally, the question is presented as to how the sufficiency of the petition in this case must be determined. It is urged that the law does not require that the petition should be signed by one-third of all the qualified voters of the district, but only by one-third of those who are voters at the election, or at least that the number voting upon the proposition at the election must be taken as the sole evidence of the number of qualified voters of the district. To adopt such a construction would, in our minds, be to effect a judicial amendment of the statute. The phrase " one-third of the qualified voters of such district" cannot be construed away. Wherever similar expressions have existed in statutes they have been construed to refer to the total number of qualified voters except where language was employed indicating another sense of the term. The number who voted at the election in controversy as well as the number who have voted at other elections may be competent evidence as tending to establish the number of qualified voters, but it cannot be conclusive. It certainly was not the intention of the legislature to make the jurisdiction of the board to call an election dependent upon the result of the election, nor could it have been the legislative intent, by the use of such language as occurs in this statute, to adopt the vote of any particular preceding election as the test. This is clear when we compare this statute with that for the relocation of county seats, where the requirement is that the petition shall be signed by resident-electors "equal in numbers to three-fifths of all the votes cast in such county at the last general election held therein." The legislature having used this language in a similar act, it is fair to presume that it would have used it in this had it so intended. The law requires that the petition be signed by one-third of all the qualified voters of the district at the time it is presented, and what number constitutes this one-third is a

question of fact to be determined like any other. The court found that there were at least 9,000 qualified voters in this district. The evidence upon the subject was not very exact. The registry lists of the city of Lincoln, containing 7,886 names, did not afford an accurate test, for the reason that the boundaries of the school district and of the city were not coincident, and for the reason that the qualifications of the voters were different. But the map of the city in evidence shows that that portion of the city not within the school district was an outlying portion and could not have embraced any very large proportion of the inhabitants. It was shown that over 4,500 votes were cast for members of the board of education at this election, and 5,600 for mayor of the city; that the population of the district was about 55,000; that it embraced over 11,000 children of school age, and that there were on the personal tax lists 4,443 names of persons entitled to vote. Whether or not there was evidence of sufficient certainty to sustain the court's finding of the existence of 9,000 qualified electors there was sufficient evidence to convince the court that the number of electors must have exceeded 5,538, which would be the limit to sustain the petition here presented.

Counsel on both sides call attention to the inadequacy of the law when applied to populous districts. The law was clearly devised with reference to districts of small population, and the cities of the state have developed to such an extent that it is difficult now to apply it generally. Some years ago the legislature, recognizing this difficulty, exempted metropolitan cities from the provision requiring a petition. The legislature of 1893, by an act which went into force soon after the acts here in controversy, made certain amendments intended to adapt the law better to the requirements of the other larger cities. The amendment came too late, however, to apply to this case. The courts cannot amend or repeal the statute because it has grown cumbersome in its application. The legislature must be

left to judge of the necessity or expediency of such a course.

We think that the district court erred in holding the petition sufficient and its judgment is for that reason reversed and an injunction allowed as prayed.

JUDGMENT ACCORDINGLY.