THE PEOPLE OF THE STATE OF NEBRASKA, EX REL THOMAS DARNELL v. THE COUNTY COMMISSIONERS OF HAMILTON COUNTY.

Removal of County Seat: SUFFICIENCY OF NOTICE. It is an imperative requirement, in an election for the removal of a county seat, that the notice thereof should in all respects conform to the law authorizing such election.

—— : ——. Thus, where the law provides that in the notice of such an election, the electors shall be directed "to designate on their ballots the place of their choice for the county seat," and the notice merely authorizes the electors to vote "for removal of county seat; against removal of county seat," such notice is insufficient, and the vote taken at the election is void.

Practice: PLEADINGS IN APPLICATIONS FOR MANDAMUS. The application for the writ and the answer are the only pleadings allowed in applications for mandamus, and if the respondent file a demurrer and the same be overruled, the writ will issue, and no further pleadings be considered.

THIS was an application to this court, in the exercise of its original jurisdiction, for a peremptory writ of mandamus to compel the county commissioners of Hamilton county to post notices of the re-location of the county seat of said county at Aurora, in accordance with the result of a vote taken at the general election on the second Tuesday of October, 1873, and to remove the records of the county to that place. The application was substantially as follows:

" To the Supreme. Court of the State of Nebraska: Your petitioner, Thomas Darnell, respectfully represents and states to the court that he is a resident, freeholder and tax payer, legal voter, and the owner of a large amount of real estate in the town of Aurora, precinct of Aurora, county of Hamilton and state of Nebraska.

And your petitioner further states that on the 3d day of September, A. D. 1873, Norris M. Bray, William Worth, and Phillip C. Housel, being the board of county commissioners of said county of Hamilton in the state of Nebraska, were in legal session in Orville City, the county seat of said county of Hamilton and state aforesaid.

And your petitioner further represents that while the said board of county commissioners were in legal session as aforesaid, a petition signed by three hundred and ninety legal voters, being two-thirds of the qualified electors of the said county, was presented to said commissioners, said petition being in words as follows, to-wit:

" To the Honorable Board of County Commissioners of Hamilton County:   We, the undersigned qualified voters of Hamilton county, would respectfully petition your honorable body, to call a vote to re-locate the county seat of Hamilton county at the next general election."

And your petitioner further represents, that while the said board of county commissioners were in legal session as aforesaid, finding that said petition was signed by

two-thirds of the qualified voters of the said county, made the following order, to-wit:

" Petition presented according to law by Thomas Darnell and other legal voters of Hamilton county, Nebraska, praying said commissioners to order an election to re-locate the county seat of said county, at the next general election. *Ordered* to be published in conjunction with notice of general election to be held in said county on the second Tuesday of October, 1873. The form of voting shall be as follows: " For removal of county seat." " Against removal of county seat."

ORVILLE CITY, NEB., Sept. 3d.

J. D. WESCOTT, county clerk."

And your petitioner would further represent that notice as aforesaid ordered, was published in the *Hamilton County News*, the official paper published in said county, for more than thirty days before the said general election on the 14th day of October, 1873.

And your petitioner further represents that the result of the canvass of the vote taken at said election was as follows:

Orville precinct, whole number of votes cast, fifty.

Farmers Valley precinct, whole number of votes cast, forty. Eleven votes for the removal of county seat to Aurora. Twenty-nine votes against removal of county seat.

Williamsport precinct, whole number of votes cast, thirty-eight. For removal of county seat to Aurora, thirty-eight votes.

Scovill precinct, whole number of votes cast, twenty-one. For removal of county seat, five votes.

Deep Well precinct, for removal of county seat to Aurora, seventy-one. Whole number of votes cast, seventy-seven.

Aurora precinct, for removal of county seat to Aurora, one hundred and twenty-three votes. For removal to town ten, section ten, range six, two votes. For removal to town ten, section sixteen, range six, one vote. Whole number of votes cast, one hundred and thirty.

North Blue precinct, for removal of county seat to Aurora, fifty-seven votes. For removal to town ten, range six, one vote. Whole number of votes cast, fifty-eight.

Beaver Creek precinct, for removal of county seat to Aurora, thirty-nine votes. Whole number of votes cast, forty-five.

And your petitioner further represents that thirty days have passed since said votes were canvassed, yet the said board of county commissioners hath utterly refused and still doth refuse to post notices in the precincts of said county, giving notice of the re-location of the county seat at Aurora, though often requested so to do.

And your petitioner further represents, that there are no reasons why the said board of county commissioners do not post the notices of the re-location of the county seat at Aurora as aforesaid, and that it is within their power to do so, and by their refusal, the county business is done at Orville City, to the great disadvantage and inconvenience of your said petitioner.

And your petitioner further states, that he is entirely without remedy in the premises unless it be by the inter-position of the court, and he therefore prays that writs of mandamus may issue against the said board of county commissioners, and that said board be commanded to post up notices of the removal of the county seat to Aurora, and that such other order may be made in the premises as justice may require."

An alternative writ was issued, returnable during the present term.

The answer of respondents admitted that they caused the notice, set forth in the application, to be published,

but denied that the petition presented, asking for a submission of a vote to re-locate the county seat, was signed by two-thirds of the legal voters of the county; and they alleged that the notice was only for the purposes of ascertaining if two-thirds of the legal voters of the county were in favor of removal, and that the notice was not intended to submit the question of re-location, but simply to test the sense of the people upon the subject. They also alleged fraud in the presentation of the petition praying for a submission of the question to a vote of the people, and that the vote which was cast for Aurora was obtained by fraud.

A large amount of testimony was taken by deposition, and the cause submitted to the court upon the pleadings and proof.

*E. E. Brown*, for the relator.

Before the commissioners could make any order in the premises, they must have found that the petition was signed by two-thirds of all the electors of Hamilton county, otherwise they would have had no jurisdiction to make any order in the premises, and upon this fact their finding is conclusive, and will not be reviewed. *Mayor, etc., v. Meserole*, 26 *Wend.*, 132. *Moores v. Smedly*, 6 *John Ch.*, 28. *Hyatt v. Bates*, 40 *N. Y.*, 164.

Having found that the petition was in due form, and signed by the requisite number of electors, the commissioners ordered the clerk to give the legal notice, and the order was entered in a public record which was at all times subject to the inspection of the public. The order being made, the law defines the manner in which the question shall be submitted and how and what notice shall be given. *General Statutes, Sec.* 8, *page* 229. *People v. Hartwell*, 12 *Mich.*, 508.

As every one is supposed to know the law it must be

supposed that the voters knew what question was submitted to them. And in this case, it clearly appears that the legal presumption was true in fact, for notwithstanding the defect in the notice, the ballots cast at the election were in legal form, and over two-thirds of all the voters of the county designated upon their ballots Aurora, as the place of their choice for county seat.

An irregularity in conducting an election which does not deprive a legal voter of his vote, nor admit a disqualified voter to vote, if it cast no uncertainty on the result will not invalidate the election. *People v. Cook*, 8 *N. Y.*, 67. *Commonwealth v. Meeser*, 42 *Pa. St.*, 343. *People v. Schemerhorn*, 19 *Barb.*, 540.

The statute providing for the notice is directory only, and if a full and fair expression of the voters has been had, the election will be valid even though no notice whatever had been given. *Dishon v. Smith*, 10 *Iowa*, 218. *State v. Jones*, 19 *Ind.*, 356. *State v. Orvis*, 20 *Wis.*, 235. *State v. Yoetze*, 22 *Wis.*, 363. *People v. Cowles*, 13 *N. Y.*, 350.

It clearly appearing in this case that the defect in the notice could *by no possibility* have changed the result, over two-thirds of *all the voters in the county* having voted for Aurora as the place of their choice, and in the manner the law directs, the writ should be made peremptory.

*T. M. Marquette*, contra.

I. There was no submission of the question of locating the county seat to a vote of the people, such as is required by law. *General Statutes*, 229, *Sec.* 8.

1. The voters were not notified by the board of county commissioners, to designate upon their ballots at said election the place of their choice for a county seat.

2. The order simply was that they designate upon their

ballots the following: "For the removal of county seat," (if for the same), or "Against the removal of county seat."

It is evident that this at least mislead those in favor of the county seat remaining at Orville, for no votes whatever were cast for that place. *Barry v. Lank*, 5 *Cold.*, 588. *McPike v. Pen*, 51 *Missouri*, 63. *Leslie v. Saint Louis*, 47 *Id.*, 474. *Knowles v. Yeates*, 31 *Cal.* 82.

II. Two-thirds of the votes polled at said election did not designate Aurora as the county seat, as the law requires. *General Statutes*, 229, *Sec.* 8. *People v. Wiant*, 48 *Ill.*, 263.

III. In re-locating a county seat the law must be fol·lowed. *State v. Washoe County*, 6 *Nev.*, 104. And the submission must be according to law; if uncertain, the vote is void. *The People, ex rel., William Colby v. Township Board of Woodhull*, 14 *Mich.*, 28. *The People v. The Judge of Wayne*, 19 *Mich.*, 296. *People v. Laine*, 33 *Cal.*, 55. *State v. Marlow*, 15 *Ohio State*, 114. *State v. Winkelmeier*, 35 *Missouri*, 103. *Jones v. The State*, 1 *Kansas*, 273.

1. The writ only asks respondents to do a thing they have no right nor jurisdiction to do. *Ingerson v. Berry*, 14 *Ohio State*, 315. *Shelby v. Hoffman*, 7 *Id.*, 450. *The People v. Supervisors of Greene*, 12 *Barbour*, 217.

2. Majorities count for nothing at an irregular election. *Commonwealth v. Baxter*, 35 *Penn. State*, 263.

3. There can be no election unless the county commissioners give the required notice that the voters are required to designate upon their ballots, their choice for county seat, as that is a condition precedent. *People v. Martin*, 12 *Cal.*, 409. *Westbrooke v. Rosborough*, 14 *Id.*, *180. *Beal v. Ray*, 17 *Ind.*, 554. *McMillan v. Lee County*, 3 *Iowa*, 311.

MAXWELL, J.

The principal question presented in this case is the sufficiency of the notice given of the election, to be held for the purpose of a re-location of the county seat.

Cooley, in his work on Constitutional Limitations, says: " When, however, both the time and place of an election are prescribed by law, every voter has a right to take notice of the law, and to deposit his ballot at the time and place appointed, notwithstanding the officer whose duty it is to give notice of the election has failed in that duty. The notice to be thus given is only additional to that which the statute itself gives, and is prescribed for the purpose of greater publicity; but the right to hold the election comes from the statute, and not from the official notice. * * In some cases preliminary action by the public authorities may be requisite before any legal election can be held. If an election is one which a municipality may hold or not, at its option, and the proper municipal authority decides against holding it, it is evident the individual citizens must acquiesce, and that any votes cast by them on the assumption of the right must be altogether nugatory. The same would be true of an election to be held after proclamation for that purpose, where no such proclamation has been made." *Cooley's Con., Lim.,* 603.

Section eight of the act in relation to county seats provides: " Whenever the inhabitants of any county are desirous of changing their county seat, and upon petition, being presented to the county commissioners, signed by two-thirds of the qualified electors of the county, it shall be the duty of the county board, in the notices for the next general election, to notify said electors to designate on their ballots at said election, the place of their choice for county seat; and if, upon canvassing the votes so given, it shall appear that any one place has two-thirds of the

votes polled, such place shall be the county seat." *General Statutes*, 229.

It is contended by the relators that the notice in this case is sufficient, and that the law in regard to notices of this character is merely directory; and if a vote is taken in pursuance of a general notice of this kind, at which any locality has two-thirds of all the votes cast, it should be declared the county seat. In the case of *The People v. County Officers of St. Clair*, 15 *Mich.*, 85., it was held, that where the board of supervisors by a vote of two-thirds, resolved that the county seat of Saint Clair should be removed to Port Huron, provided "*suitable guaranties*" should be given within ninety days for the erection of county buildings, free of cost to the county, but submitted to the popular vote the simple question of removal without including the proviso, the submission was void, as the law contemplates that the people and supervisors shall vote on precisely the same question."

The testimony in the case before us shows, that while two-thirds of the votes cast on the question of county seat were cast for Aurora, yet a large number voted only "for or against removal." It is clearly apparent from the evidence, also, that the matter was not fully understood by the people of the county, and there was no fair submission of the question. It is an imperative requirement in elections of this kind, that the notice of election should in all respects conform to the law so as to apprise each citizen of the county of the nature of the election, so that he may by ballot express his choics for the county seat.

LAKE, CH. J. and GANTT, J., concurring, the writ must be refused.

APPLICATION DENIED.

Before filing answer in this cause, *Marquette*, attorney

for respondents, desired to know the effect of filing a demurrer instead of an answer.

The court, per LAKE, CH. J., announced the rule to be that in this class of cases the only pleadings allowed would be the application for the writ, and the answer as contemplated by the code. Parties might file a demurrer, but if the same was overruled, the writ would issue and no further pleadings be allowed.