THE STATE OF NEBRASKA, EX REL. OMAHA & REPUBLICAN VALLEY RAILROAD COMPANY, v. H. A. BABCOCK, AUDITOR OF PUBLIC ACCOUNTS.

Internal Improvements: BONDS: PRECINCT BONDS: ELECTION. Under the provisions of section 14, chapter 45, of the Compiled Statutes of 1885, to authorize the county commissioners to call a special precinct election for the purpose of voting bonds in a precinct in aid of works of internal improve-

ments, etc., a petition signed by not less than fifty freeholders of such precinct must be presented to such county commissioners, setting forth the nature of the work contemplated, the amount of bonds sought to be voted, the rate of interest, and the date when the principal and interest shall become due. An election called and held without such petition is of no validity.

ORIGINAL application for mandamus.

*Williams, Jencks, and Redlon,* for relator.

*William Leese, Attorney General,* for respondent.

MAXWELL, CH. J.

This is an application for a peremptory writ of mandamus to compel the defendant, as auditor of public accounts, to certify certain bonds issued by Dannebrog precinct to the relator. The case is submitted upon the following stipulation of facts:

"1. That the plaintiff is a railway corporation, organized and existing under the laws of the state of Nebraska, and the corporate successor to the Omaha & Republican Valley Railroad Company, and to all its rights, franchises, properties, and lines of railway, and appurtenances thereunto belonging.

"That the defendant, H. A. Babcock, is the duly elected and qualified auditor of public accounts of the state of Nebraska, and has been performing the duties of such office since the first Thursday after the first Tuesday in the month of January, 1884.

"3. That Dannebrog precinct was duly erected and denominated as a precinct of Howard county, Nebraska, prior to the 27th day of April, 1885, and that Howard county is duly organized as such county under the laws of the state of Nebraska.

"4. That on the 27th day of April, 1885, twenty-seven taxpayers and citizens of said Dannebrog precinct peti-

tioned the county commissioners of said Howard county to call a special election in said precinct for the purpose of voting on a proposition to issue bonds of said precinct in the sum of $13,000, to aid the Omaha and Republican Valley Railroad Company in the construction and equipment of its line of railroad through said precinct upon the line specified in the copy of said proposition. * * *

" 5. That no bond was executed or filed conditioned to save the said Howard county harmless against the payment of the expenses of such election in case the said proposition should fail to receive the required number of votes to secure its adoption.

" 6. That on the 27th day of April, 1885, the Omaha and Republican Valley Railroad Company, by its duly authorized agent, filed in the office of the county commissioners of said Howard county, a proposition to the qualified electors of said Dannebrog precinct, to vote the bonds of such precinct in the sum of thirteen thousand dollars, to aid the company in the construction of its line of railroad through said precinct on the line of route specified in the copy of the proposition. * * * * * *

" 7. That on the 14th day of May, 1885, the said county commissioners, in lawful session, called a special election to be holden in said precinct on the 23d day of June, 1885, for the purpose of submitting said proposition to the qualified electors of said precinct.

" 8. That due and legal notice of such election, together with said proposition, was published for the time and in the manner and form required by law, and a copy of said proposition was duly posted up at the polls during said day of election.

" 9. That said election was held at the time and place designated in said call and notice.

" 10. That the result of said election was duly returned and canvassed as required by law, and that the result thereof was duly certified to the said county commis-

sioners, and that the whole number of votes cast at said election in favor of said proposition was two hundred and thirty-three, and that the whole number of votes cast thereat against said proposition was thirty-nine.

"11. That thereupon the said county commissioners declared said proposition adopted, and ordered the same, together with the result of said election, to be spread at large upon the commissioner's record of said county, and ordered notice thereof to be published for the time and manner required by law, all of which was done accordingly.

"12. That the plaintiff and its said corporate predecessor have done and performed all things on their part required by law with reference to the submission of said proposition, and to the construction, equipment, completion, and operation of plaintiff's said line of railroad to insure the issuance to it of valid and subsisting bonds under said proposition; and that prior to the 27th day of November, 1885, the plaintiff had fully complied on its part with all the terms and conditions of such proposition, and that from a time prior to the last-named date, until the present time, the inhabitants of said Dannebrog precinct have been in the enjoyment of the benefits derived from the daily operation of plaintiff's said line of railroad.

"13. That on the 27th day of November, 1885, the county commissioners of said Howard county executed and issued the bonds of said Dannebrog precinct in the aggregate sum of thirteen thousand dollars, under the terms and conditions of said proposition, and delivered the same to the plaintiff, and that the aggregate sum of such bonds is within the limit of the per cent of the valuation of the property of such precinct that may be legally voted by and issued against the same for such purpose.

"14. That at the time the said citizens and taxpayers of said precinct presented their said petition to the county commissioners of said county, and at the time said election was ordered as aforesaid, the act of the legislature of the

state of Nebraska entitled 'An act to authorize precincts, townships, and villages to vote bonds to aid works of internal improvements—highways, railroads, bridges, courthouses, jails, and the drainage of swamp lands, and to repeal section 7 of chapter 45 of the Compiled Statutes of Nebraska, entitled, 'Internal Improvements,' approved March 6th, 1885, had not been published according to law, nor otherwise promulgated, and the qualified voters voting at said election had no notice of any defect in the record of the proceedings in relation to the issuance of said bonds.

"15. That the failure on the part of the freeholders of said precinct to present to the commissioners of said county a petition signed by fifty of their number, asking that said election be called, and their failure to execute and deliver to said commissioners a bond signed by them, conditional to save the said county harmless against the payment of the expenses of said election if the proposition should fail of adoption, cannot be said to have changed or affected the result of said election in any way whatever.

"16. That on the ...... day of ......, 188..., prior to the commencement of this action, the plaintiff, by its authorized agent, presented said bonds, together with a duly certified statement of all the proceedings had with reference to the execution and issuance of said bonds, to the defendant, H. A. Babcock, in his official capacity as such auditor, with the request that he register and certify the same in manner required by law, which request was refused by him, and said bonds are still unregistered and uncertified, and that the plaintiff is otherwise remediless.

"17. That the sole ground of objection on the part of the said defendant, H. A. Babcock, to the registration and the certification of said bonds is that the petition and bond mentioned in paragraph 15 of this stipulation were not presented and filed in accordance with the provisions of section 14 of chapter 45 of the Compiled Statutes of Nebraska of 1885, he claiming that the certified statement filed in his

office should show that said petition and bond were duly presented and filed—the plaintiff claiming that said bonds ought to be registered and certified, notwithstanding the failure to present such petition and bond, and that the provisions of said section 14 requiring said petition and bond to be presented are unconstitutional and void.

"18. The court is requested to consider and determine all questions of law, whether constitutional, statutory, or otherwise, that may be presented with reference to the foregoing statement of facts, to the end that the matters of contention between the parties may be fully adjusted, and a rule of action be established for the defendant, H. A. Babcock, in the further discharge of his official duties; and it is agreed that if the court should find that the provisions of section 14 of chapter 45 of the Compiled Statutes of Nebraska of 1885 requiring a petition signed by fifty freeholders, and a bond to be executed by them conditioned as aforesaid, are unconstitutional and void, or if the court should find that the said precinct bonds ought to be registered and certified, notwithstanding such petition and bond were not presented, then, in either event, a peremptory writ of mandamus shall issue directed to the defendant, H. A. Babcock, requiring him to register and certify said precinct bonds as required by law, otherwise this action shall be dismissed at plaintiff's cost."

It will be observed that the principal question for determination is the right of the county commissioners to call a special election for the purpose of voting bonds, without a petition duly signed by the requisite number of freeholders presented to them for that purpose.

Section 14 of chapter 45 of the Compiled Statutes of 1885 provides that, "Any precinct, township, or village (less than a city of the second class), organized according to law, is hereby authorized to issue bonds in aid of works of internal improvement, highways, bridges, railroads, courthouses, jails in any part of the county, and the drainage of

swamps and wet lands, to an extent not exceeding ten per cent of the assessed value of the taxable property at the last assessment, within such township, precinct, or village, in the manner hereinafter directed, viz. : 1st. A petition signed by not less than fifty freeholders of the precinct, township, or village shall be presented to the county commissioners, or board authorized by law to attend to the business of the county within which such precinct, township, or village is situated. Said petition shall set forth the nature of the work contemplated, the amount of the bonds sought to be voted, the rate of interest, 'which shall in no event exceed eight per cent per annum, and the date when the principal and interest shall become due; and the said petitioners shall give bond, to be approved by the county commissioners, for the payment of the expenses of the election in the event that the proposition shall fail to receive a two-thirds majority of the votes cast at the election. 2d. Upon the reception of such petition the county commissioners shall give notice and call an election in the precinct, township, or village, as the case may be. Said notice, call, and election shall be governed by the law regulating the election for voting bonds by the county."

Under this section the authority of the county commissioner to call a special election for the purpose of voting precinct bonds, is based upon the fact that a petition, signed by not less than fifty freeholders of the precinct, has been presented to the county commissioners, which petition shall set forth the nature of the work contemplated, the amount of bonds sought to be voted, the rate of interest, and the time when the principal and interest shall become due. It is only upon the reception of such a petition that the commissioners have authority to call an election for the purpose of voting bonds in the precinct. It is claimed on behalf of the relator, that the section above quoted, so far as it requires a petition signed by fifty freeholders, to authorize the county commissioners to call an election, is in conflict

with the constitution, because it restricts the right of suffrage, and therefore it is void.

A county or any of its subdivisions has no inherent right to vote bonds. *Hamlin v. Meadville*, 6 Neb., 227. *Hallenbeck v. Hahn*, 2 Neb., 397. The right, therefore, is derived entirely from the statute, the terms of which must be substantially complied with. The effect of voting and issuing bonds by a precinct, is to create a lien upon all the realty of such precinct for the payment of such bonds and interest. It is eminently proper, therefore, that at least fifty freeholders of such precinct should certify to the county commissioners their desire to have such incumbrance placed upon their property. At the election duly called, in pursuance of a petition filed as above, all legal voters of the precinct have the right to vote, whether freeholders or not. It would be possible, therefore, if the petition was dispensed with, for transient persons, temporarily stopping in the precinct, but having no permanent interest in its prosperity, to vote bonds on such precinct to the extent of its legal liability, to the payment of which they would contribute nothing. It is a condition precedent, therefore, to the right of the commissioners to call a precinct election for the purpose of voting bonds of such precinct, that a petition signed by fifty freeholders thereof, stating the facts required by the statute, be presented to such commissioners for that purpose. Whether the failure to give bonds for the payment of the expenses of the election, in the event that the proposition fail to receive a two-thirds majority of the votes cast at such election, would affect the validity of such bonds if voted, we need not now determine. The proper course, however, is for the commissioners to require such bonds in all cases. These provisions of the statute are not in conflict with the consititution, and are valid. As no lawful petition was presented to the county commissioners they had no authority to call the election in question, and the proceed-

ings were void.  *People v. Hamilton Co.*, 3 Neb., 244. The writ must therefore be denied.

WRIT DENIED.

THE other judges concur.