### SWAN et al. v. CITY OF ARKANSAS CITY.

(Circuit Court, D. Kansas, Second Division. May 16, 1894.)

1. MUNICIPAL CORPORATIONS—BONDS.
   Under Comp. Laws Kan. 1885, c. 19, art. 1, § 5, which declares that the powers granted to cities of the second class "shall be exercised by the mayor and council of such cities," and article 7, § 111, which directs that funding bonds shall be duly issued only after an ordinance therefor shall be duly passed, funding bonds signed by the mayor of such a city, and attested by the city clerk, under the city seal, without any ordinance or resolution of the mayor and council, are void.

2. SAME—ESTOPPEL BY RECITALS.
   A recital in such bonds, to the effect that all the requirements of the statutes have been strictly complied with in issuing them, does not estop the city from denying their validity.

Action by the firm of Swan & Barrett against the city of Arkansas City to recover interest on certain bonds.

Rossington, Smith & Dallas, for plaintiffs.
John A. Eaton and Pollock & Love, for defendant.

WILLIAMS, District Judge. This is an action against defendant, which is a city of the second class, on interest coupons of bonds issued under the provisions of an act of the legislature approved March 8, 1879, authorizing a refunding of indebtedness. Under this act, bonds issued by any city are to be signed by the mayor, and attested by the city clerk, under the seal of the city. There were 54 bonds issued, each of $1,000, bearing 6 per cent. interest

per annum, evidenced by coupons, which, not being paid, are the subject-matter of this action.  The bonds recite:

"That they were executed and issued by the city to compromise and refund its matured and maturing indebtedness heretofore legally created by said city and in accordance with the above named act of 1879."

And there is this further statement in the bonds:

"And it is hereby certified that the total amount of this issue of bonds does not exceed the actual amount of the outstanding indebtedness of said city, and that all the requirements of the provisions of the foregoing act have been strictly complied with in issuing this bond."

They were signed by the mayor, and attested by the city clerk, under the seal of the city.  The other provisions of law relating to cities of the second class in force at that time, in so far as they are applicable to the issues raised in this case, are:

"The powers granted to and conferred upon cities of the second class shall be exercised by the mayor and council of such cities, as provided by law." Comp. Laws Kan. 1885, c. 19, art. 1, § 5.

"Before any bonds authorized by this act shall be issued, an ordinance of the city shall be duly passed, providing for the issuance and exchange or sale of said bonds; and said bonds or coupons when issued, shall be signed by the mayor and city clerk and shall have the seal of the city attached thereto." Id. c. 19, art. 7, tit. "Funding Bonds," § 111.

Section 10, c. 19, art. 1, directs the clerk to keep an ordinance book, in which all ordinances shall be recorded immediately after their passage.  The bonds sued on were issued by the mayor without any ordinance of the council authorizing their issuance, nor is there any record of a resolution of the council to that effect.  From the evidence it is clear that a great fraud was perpetrated on the city by the issuance of these bonds.  The mayor was the president of the railroad company to whom the bonds were issued; the president of the city council was the president of the construction company, and nearly every member of the council was a guarantor of a subscription to the railroad company.  At first the city issued $24,000 in bonds and $30,000 in warrants to the company, but the brokers in New York, Coler & Co., being unwilling to purchase these, the bonds now sued on were issued at their suggestion.  The object was to estop the city from ever questioning the validity of these bonds and warrants.  The evidence of Mr. Coler, the broker who purchased the bonds, leaves no doubt in my mind that he was fully cognizant of the fraud practiced upon the city.  Whether Coler was the agent of plaintiffs, and whether his knowledge affects plaintiffs, it is unnecessary to decide in this case, for the proof is conclusive that plaintiffs purchased these bonds from Spitzer & Co., who were innocent holders, and all their rights passed to plaintiffs.  Porter v. Steel Co., 122 U. S. 267, 7 Sup. Ct. 1206; Scotland Co. v. Hill, 132 U. S. 107, 10 Sup. Ct. 26.  Plaintiffs are, therefore, entitled to all the protection which the law gives to holders of this class of securities, who purchased them without notice and for value.  Since the decision of the supreme court in the Knox Co. Case, 21 How. 539, it is the settled doctrine of the United States courts that, in an action on municipal bonds by an innocent holder, the municipality

will be estopped to deny the truth of all recitals contained in the bonds which the officers issuing them were, by law, to determine before issuing the bonds. But this does not affect the power of the corporation or its officers to issue the bonds. No recitals can estop the municipality from pleading a want of power to issue the bonds, for the reason that municipalities and the officers thereof are but agents with limited powers, and their authority to act must be found in the public acts, and will not be presumed to exist. It requires no citation of authorities for this rule, and the learned counsel for plaintiffs in their able brief concede this to be the law.

The evidence clearly shows that these bonds were issued without any ordinance or resolution of the mayor and council. Is this fatal? On behalf of plaintiffs it is urged that the recitals in the bonds "that. all the requirements of the provisions of the act have been strictly complied with in issuing them makes it unnecessary for a purchaser to examine the public records of the city for the purpose of ascertaining whether the mayor had been duly authorized to issue the bonds; that it is within the power of the mayor to pass upon that fact, and the issuance of the bonds by him is conclusive that the power existed." I cannot give my assent to this proposition, nor do any of the cases cited by the diligent counsel go to that extent. The decisions of the United States circuit court of appeals for the eighth circuit are conclusive on this count, and National Bank of Commerce v. Town of Grenada, 10 U. S. App. 692, 4 C. C. A. 212, 54 Fed. 100, is decisive of this case. In that case the court says:

"The plaintiff was bound to know, independently of the recitals in the bond, that there was such an ordinance in existence. If the officers authorized to issue the bonds upon a condition are not the appointed tribunal to decide the fact which constitutes the condition, their recital will not be accepted as a substitute for proof. The very ground of the estoppel is that the recitals are the official statement of those to whom the law refers the public for authentic information on the subject."

There can be no doubt that this is the correct rule of law, and any other rule would place every city at the mercy of a single officer. The general laws of Kansas expressly vest all powers granted to cities of the second class in the mayor and council. Cities cannot act except through them. How are they to act, and how are their acts to be made known to the public? Chapter 19, art. 7, § 111, directs that funding bonds shall be issued only after an ordinance shall have been duly passed. It is true the bonds sued on herein were issued under the provisions of a later act of the legislature, but the fact that the act of 1879 fails to provide for the manner in which the bonds shall be issued raises the presumption that the legislature considered the laws then in force sufficient for that purpose, and for that reason made no further provision on that subject.

It cannot be denied that a city in Kansas cannot act except through its mayor and council when duly assembled for that purpose, and their acts must be evidenced by the record, whether by ordinance or resolution; and, as the proof in the case at bar failed to show that. they acted in either manner, it is unnecessary to determine whether a resolution authorizing the refunding would be sufficient. It was

plaintiffs' duty, before purchasing the bonds, to examine the records, and ascertain whether the mayor and council had ever authorized their issuance, and, failing to do so, they will be charged with notice of the facts which they could have ascertained by such an examination. Neither Board v. De Kay, 148 U. S. 591, 13 Sup. Ct. 706, nor City of Alma v. Guaranty Sav. Bank, 60 Fed. 203, have any application to this case, as the only question involved there was whether a resolution of the mayor or council submitting the question of issuing bonds at an election was sufficient. In my opinion, the act of the mayor in issuing these bonds was wholly without authority, and they are therefore void. As this disposes of the case, it is unnecessary to pass on the other issues raised by the defense. There must be judgment for the defendant.