## CHILTON v. TOWN OF GRATTON.

(Circuit Court, D. Nebraska. September 30, 1897.)

**1. TOWNSHIP BONDS—VALIDITY—INNOCENT PURCHASERS.**

The question whether the petitioners for an issue of township bonds were freeholders of the township, as required by the statute, is one which cannot be questioned by the township, as against innocent holders of the bonds, after the same has been determined by the county board, the bonds issued, and the avails thereof received.

**2. SAME—BONDS OF TOWNSHIP CONTAINING SECOND-CLASS CITY.**

Under the statutes of Nebraska, the powers and jurisdiction of a second-class city, and of a township in which it may be located, are entirely separate and distinct, and therefore the township may issue bonds based on the combined assessed valuation.

**3. SAME—CONSTITUTIONAL LIMITATION—OVERISSUE OF BONDS.**

The Nebraska constitutional limitation on municipalities is not as to the bonded indebtedness for all purposes, but upon the amount to be issued for works of internal improvement, which do not include a county court house.

**4. SAME—STATUTORY LIMITATION—DETERMINATION VESTED IN BOARD.**

When limitations as to amount of indebtedness are imposed by statute, and not by the constitution, the legislature may create a board with authority to determine the questions of fact upon which the amount of limitation depends, and its finding will be conclusive in favor of bona fide purchasers.

**5. SAME—NOTICE FROM RECORDS.**

When the limit of an issue of bonds is to be ascertained from records or data which are peculiarly within the knowledge and control of the officers of the municipality, or they have better access to the information than other persons, and can ascertain the amount with more certainty than strangers, then the bonds will be held valid in the hands of bona fide holders.

**6. SAME—COMPLIANCE WITH CONDITIONS—RECITALS IN BONDS.**

Purchasers of railway aid bonds are not required to ascertain what conditions as to time of completing the road were imposed by the proposition voted on, where such conditions were not shown on the face of the bond, and the bonds recite a compliance with the law.

**7. SAME—PROCEEDING TO ENJOIN TAX TO PAY BONDS—BONDHOLDERS NOT PARTIES.**

Holders of municipal bonds, who were not made parties to a suit brought by taxpayers to enjoin the proper officers from levying and collecting a tax

to pay them, are in no manner affected by a judgment granting the injunction.

This is an action to recover upon interest coupons due on certain railroad bonds issued by the defendant township and owned by plaintiff, Henry P. Chilton. The material facts are, in substance, as follows:

The defendant township is one of the subdivisions of Holt county, Neb., said county having adopted township organization in the year 1887, under the provisions of the statute providing therefor. In the year 1885, one of the political subdivisions of the county was Center precinct, which embraced, with other territory, that which comprises Gratton township. In the year 1885 said Center precinct voted and issued its bonds in the sum of $10,000 to aid in the building of a court house in said county. In the year 1886 said Center precinct was divided, a portion of the territory thereof being detached and formed into a new precinct named "Shields Precinct." At the time of the adoption of township organization in 1887, the territory then comprising said Center precinct was organized into Gratton township and Shields precinct into Shields township. The proceedings of the county board relative to the division of Center precinct, the formation of Shields precinct, the territory embraced in each, the adoption of township organization, and the organization of Center precinct into Gratton township, were all made a matter of record in recorded proceedings of said county board. On the 23d day of December, 1889, there was filed with the board of supervisors of said county a petition signed by 53 persons praying for the submission to the electors of Gratton township of a proposition to issue bonds of said township in the sum of $36,000 to aid in the construction of the Nebraska & Western Railway. Only 35 of the persons signing the said petition were freeholders of Gratton township, and 48 of the signers were voters and residents of the city of O'Neill. The persons who circulated the said petition for signers represented to the signers thereof, and to the voters of Gratton township, that the railway company would build said line of railway from Sioux City, Iowa, through to the city of Ogden, in the territory of Utah, traversing and passing through Holt county and Gratton township from east to west, and that the work would be carried on continuously until said line of railway should be completed between the termini above named. In the said petition the only condition and provision relative to the termini was as follows: "The proceeds of said bonds to be used to aid in the construction of a line of railway passing into the county of Holt from the east, and through the said township to the city of O'Neill, in said county, such proceeds to be given to the Nebraska & Western Railway when it shall complete a line of said railway and have cars running thereon to the city of O'Neill on or before August 1, 1890." At the meeting of the board of supervisors of said Holt county held on said 23d day of December, 1889, a finding was made by said board, and entered of record, that said petition was signed by more than 50 freeholders of Gratton township, and an election was called in said county, to be held on the 30th day of January, 1890, at which election the proposition for issuing said bonds was submitted. The provision and condition relative to the termini, and time in which the road was to be completed, and proceeds of the bonds to be given to the railway company, was the same as stated in said petition. At the election there were 418 votes cast in favor of issuing said bonds and 10 votes against. Three hundred and fifty-five of said votes were cast by persons residing within the corporate limits of the city of O'Neill, and 103 by persons residing within Gratton township, outside of the city of O'Neill. Said line of railway is and was constructed through the city of O'Neill to the west line of the corporate limits of said city, and into Gratton township, and extends easterly from said city to and across the south line of Gratton township. The western terminus of said line of railway is and has been a point six miles east of the west line of Gratton township. Said railway was not constructed wholly through said township, but was into said township to the city of O'Neill, there having been built 5 1/20 miles of said railway in said Gratton township. That prior to and since the 1st day of August, 1890, said rail-

way was built to the city of O'Neill, and freight and passenger trains have been continuously operated thereon since August 1, 1890. The city of O'Neill is a municipal corporation organized under the laws of the state of Nebraska, is wholly within the territorial limits of Gratton township, the territory within the limits of said city being a portion only of the territory within the township. At the time of the voting and the issuance of the bonds in question, the said city of O'Neill was a city of the second class, and had a population of 1,300 people. The assessed value of the taxable property of Gratton township for the year 1889, which was the last assessment preceding the election at which the proposition to vote said $36,000 railway bonds was voted upon, was $436,941, of which amount $227,438 was the assessed value of property within the corporate limits of the city of O'Neill, and $209,503 was of property within the township outside of said city. For the year 1890, the assessed value was $415,238, of which amount $219,591 thereof was the assessed value of the property within the limits of the city, and $195,647 the assessed value outside of said city. The assessed value of the property of Shields township for the year 1889 was $77,742, and for the year 1890, $75,426. The said $10,000 court-house bonds of Center precinct were duly registered and certified to by the auditor and secretary of state, and were at the time the $36,000 railway bonds were voted and issued unpaid, and in the hands of bona fide owners. The $36,000 railway bonds of Gratton township were duly registered and certified to by the auditor and secretary of state, and plaintiff is the bona fide owner and holder of a portion thereof. Each court-house bond recited on its face that it was one of a series of 10 of the denomination of $1,000 each. The bonds of Gratton township, among other things, contain the following recital: "This bond is issued for the purpose of aiding the Nebraska and Western Railway Company in the construction of a railroad through said Gratton township: said railroad to pass into the county of Holt from the east through the said Gratton township, and have cars running thereon to the city of O'Neill on or before August 1st, 1890; and is one of a series of thirty-six (36) bonds of one thousand dollars each, and numbered from one to thirty-six, inclusive; and said bonds are issued under and by authority of the state of Nebraska, found in chapter 45, on pages 540,·541, and 542 of the Compiled and Annotated Statutes of the State of Nebraska of the Year 1889, and the other laws of the state of Nebraska in relation thereto. The question of issuing this bond and the others of said series amounting to thirty-six thousand dollars was upon petition, as required by law, submitted by the board of supervisors of said county of Holt to a vote of the legal voters of said township in the manner provided by law, at an election held on the 30th day of January, 1890, at which said election there were 418 votes 'for' and 10 votes 'against' issuing said bonds; there being more than two-thirds of the votes cast at said election in favor of said proposition; and the board of supervisors, being vested by law with authority for that purpose, having found that all the requirements of the law necessary to authorize the issue and delivery of said bonds had been fully complied with, and that said bonds were voted according to the laws of the state of Nebraska, ordered that they be issued and delivered accordingly, and that they be and continue a subsisting debt against said township until they are paid and discharged." No notice was published in any newspaper of the adoption of the proposition to issue said bonds. And the interest coupons of said bonds prior to April 1, 1895, were paid by defendant. In November, 1890, an action was commenced in the district court of Holt county, Neb., by Wilson Hoxie and others, taxpayers of Gratton township, against Barrett Scott, county treasurer, and John C. Hayes, tax collector, of Gratton township, praying for an injunction enjoining the collection of taxes assessed and levied within said township, for the purpose of paying the interest on said bonds, and part of the principal thereof. Such proceedings were had in said action that a judgment was entered by said court for defendants, which judgment was reversed on appeal by the supreme court (45 Neb. 199, 63 N. W. 387), and the case remanded to the district court, where, in September, 1895, a decree was entered in said action, perpetually enjoining the collection of the tax to pay the principal or interest upon said bonds, which decree is unappealed from and unreversed.

M. F. Harrington and G. W. Seevers, for plaintiff.

H. E. Murphy, William B. Sterling, and B. T. White, for defendant.

MUNGER, District Judge (after stating the foregoing facts). The sections of the statute under which the bonds in question were issued, and material in the consideration of this case, are as follows (sections 14, 15, c. 45, p. 696, Comp. St. 1897):

"3518.  Section 14.  (Election.)  Any precinct, township or village (less than a city of the second class) organized according to law, is hereby authorized to issue bonds in aid of works of internal improvement, highways, bridges, railroads, court house, jails in any part of the county, and the drainage of swamps and wet lands, to an extent not exceeding ten per cent. of the assessed value of the taxable property at the last assessment within such township, precinct, or village, in the manner hereinafter described, namely: First:—A petition signed by not less than fifty freeholders of the precinct, township or village shall be presented to the county commissioners or board authorized by law to attend to the business of the county, within which such precinct, township or village is situated.  Said petition shall set forth the nature of the work contemplated, the amount of the bonds sought to be voted, the rate of interest, which shall in no event exceed eight per cent. per annum, and the date when the principal and interest shall become due; and the said petitioners shall give bonds to be approved by the county commissioners, for the payment of the expenses of the election, in the event that the proposition shall fail to receive a two-thirds of the majority of the votes cast at the election.  Second:—Upon the reception of such petition the county commissioners shall give notice and call an election in the precinct, township or village, as the case may be.  Said notice, call and election shall be governed by the law regulating the election for voting bonds by a county.  Laws 1885, c. 58.

"3519.  Section 15.  (Issuance of Bonds.)  If two-thirds of the votes cast at such election shall be in favor of the proposition, the county commissioners or board shall, without delay, cause to be prepared and issued, the bonds in accordance with the petition and notice of election; said bonds shall be signed by the chairman of the board or other person authorized to sign county bonds, and attested by the clerk of the county under the seal of the county.  Said bonds shall state for what purpose issued; the amount, and when payable, interest and when payable, and the number of each bond.  The county clerk shall enter upon the records, of the board, the petition, bond, notice, and call for the election, canvass of vote, the number, amount and interest, and date at which each bond issued shall become payable; and the county clerk shall cause such bond to be registered in the office of the secretary of state and state auditor, as required by law."

The county attorney, in his argument and brief, urges that, as less than 50 of the petitioners praying for the calling of the election to vote upon the proposition to issue the bonds were freeholders of the township, the county board were without jurisdiction, and for. that reason the bonds are void, even in the hands of a bona fide holder. In support of this proposition he cites the following Nebraska cases: State v. School Dist., 10 Neb. 544, 7 N. W. 315; State v. School Dist., 13 Neb. 82, 12 N. W. 812; Orchard v. School Dist., 14 Neb. 378, 15 N. W. 730; State v. Babcock, 21 Neb. 187, 31 N. W. 682; Wullenwaber v. Dunigan, 30 Neb. 877, 47 N. W. 420; Fullerton v. School Dist., 41 Neb. 593, 59 N. W. 896; Hoxie v. Scott, 45 Neb. 199, 63 N. W. 387. I do not think these cases support his contention. In State v. School Dist., 10 Neb. 544, 7 N. W. 315, the facts clearly established that there were but three legal voters within the district; that the district was fraudulently organized by residents of an adjoining state, and the bonds issued without any notice of an election.

In State v. School Dist., 13 Neb. 82, 12 N. W. 812, a peremptory writ of mandamus was issued, requiring the officers of the district to report the amount of the bonds to the county clerk, that the county board might levy the necessary taxes to pay the same. The law required that a written request, to be signed by at least five legal voters, be had, before a special meeting of the district could be called to vote the bonds. An attempt was made to show that of the signers there were not five who were legal voters of the district. Maxwell, J., speaking for the court, said:

"When the proceedings have been conducted in good faith, and a request, properly signed, has been acted upon by the officer or officers upon whom the law imposes the duty of calling such meeting, and the meeting has been held, and the object of the request indorsed by the legal voters of the district, we will not, in a collateral proceeding, inquire whether all the persons signing said request had resided in the district a sufficient length of time to entitle them to vote therein or not. If they had not, any taxpayer of the district could enjoin the issuing of bonds, because unauthorized; but, after the meeting has been held in pursuance of the notice, the bonds issued and sold, and the district has received the avails, it is too late to raise the objection."

Orchard v. School Dist., 14 Neb. 378, 15 N. W. 730, was an action upon a bond issued by the school district. The defense was that the same was issued without authority. The request having been signed by only four legal voters of the district, the bond was held valid in the hands of an innocent purchaser. State v. Babcock, 21 Neb. 187, 31 N. W. 682, was an application for a peremptory writ of mandamus to compel the auditor of public accounts to certify certain bonds issued by Dannebrog precinct. No question of the right of a purchaser was involved. Wullenwaber v. Dunigan, 30 Neb. 877, 47 N. W. 420, was an action to enjoin the issue of bonds. Fullerton v. School Dist., 41 Neb. 593, 59 N. W. 896, was an action to restrain the defendant from registering, issuing, and selling certain bonds of the school district for the reason that the request for the election was not signed by the requisite number of legal voters. The court, after reviewing the foregoing cases, says:

"In a series of cases the court has refused to permit an inquiry into the qualifications of signers of petitions after the bonds had been issued and passed into the hands of innocent purchasers; but these cases are all based upon the distinction between the position of a taxpayer seeking relief promptly and one who has stood by until the rights of innocent purchasers have accrued."

Hoxie v. Scott, 45 Neb. 199, 63 N. W. 387, is a case referred to in the statement of facts, in which an injunction was granted against the tax levied to pay the interest and part of the principal of these bonds. In the opinion, the court says:

"We shall not assume to pass upon the rights of holders of the bonds as bona fide purchasers, because these parties are not in court. The proposition upon which this appeal must be determined must be considered as though there has been no sale of the bonds by the railroad company."

These decisions of the state court, in my opinion, not only do not support the doctrine contended for that the want of a sufficient petition renders the bonds void in the hands of an innocent purchaser, but rather sustain the contrary, when the rights of bona fide purchasers are considered. As stated by Irvine, C., in Fullerton v. School Dist.:

"It is therefore apparent that the court in all the cases referred to has considered the question of the sufficiency of the petition a judicial question open to inquiry in a proper collateral proceeding, but has held parties precluded from the inquiry upon a reasonable doctrine of estoppel when they have acquiesced in the proceedings until the rights of third persons have accrued."

The uniform holding of the supreme court of the United States is that, where the municipality is authorized by legislative enactment to issue negotiable bonds upon the performance of precedent conditions, and such bonds are issued containing recitals that they are issued in accordance with the provisions of such statute, the bona fide purchaser has a right to presume that all the prerequisites of the law to a valid issue have been complied with, where it may be gathered from the statute that the officers issuing such bonds were empowered to decide whether there has been a compliance with the precedent conditions. Knox Co. v. Aspinwall, 21 How. 539; Moran v. Miami Co., 2 Black, 732; Mercer Co. v. Hacket, 1 Wall. 83; Supervisors v. Schenck, 5 Wall. 784; Town of Venice v. Murdock, 92 U. S. 494; Moultrie Co. v. Savings Bank, Id. 631; Warren Co. v. Marcy, 97 U. S. 96; Northern Bank of Toledo v. Porter Tp. Trustees, 110 U. S. 608, 4 Sup. Ct. 254. That the question as to whether the petitioners were freeholders of Gratton township was one to be passed upon and determined by the county board, there can be no doubt. Marcy v. Oswego Tp., 92 U. S. 637; Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613; Moulton v. Evansville, 25 Fed. 382, and cases supra.

It is further urged that the city of O'Neill, although included in the limits of Gratton township, cannot be considered as a portion of said township in determining whether the issue of bonds was in excess of the amount allowed by the statute based upon the assessed valuation of the property within the township. This claim is urged upon the well-recognized principle that "there cannot be at the same time, within the same territory, two distinct municipal corporations exercising the same power and jurisdiction." An examination of the statutes of Nebraska relative to townships will, I think, convince any one that the powers and jurisdiction of cities of the second class (like O'Neill) and townships are entirely separate, distinct, and unlike in all respects, and hence the rule has no application to this case. All the counsel for defendant unite in the claim that the proportionate share of the court-house bonds issued by Center precinct, collectible from the taxable property of Gratton township, was, at the time of voting and issuing the bonds in question, an indebtedness of Gratton township, and for that reason the $36,000 of railroad bonds were and are invalid as an overissue. That the court-house bonds are to be paid by Shields and Gratton townships (the territory of which comprised Center precinct) in proportion to the taxable property of each, there can be no doubt; and if the proportion which Gratton Township was liable for, based on the last assessment prior to the issuing of the $36,000 of bonds, was an indebtedness of Gratton township, within the terms of the statute, then the issue of $36,000 was in excess of the amount permitted by law, and invalid unless the plaintiff is accorded the usual rights of a bona fide holder of com-

mercial paper. It is, however, urged that plaintiff cannot be regarded as a bona fide holder to the extent that defendant is estopped by recitals from pleading the invalidity of the bonds by reason of the excessive issue; the contention being that, where the existence of facts which are to be considered in determining the authority to issue such bonds are to be found and determined from public records other than those which the county board are required to make as steps in the proceedings relating to the issue, then all purchasers are bound to take notice of the facts shown by such public records. In this case it is said that the public records disclose that the territory comprising Gratton township and Shields township was formerly Center precinct, and that the public records show that the court house bonds had been issued and registered by the secretary and auditor of state; that the outstanding issue of bonds being thus shown, all persons dealing in them were bound to take notice of the fact, and that the rule of law enunciated in the cases of Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315; Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654; Nesbit v. Independent Dist., 144 U. S. 617, 12 Sup. 746; and Sutliff v. Commissioners, 147 U. S. 234, 13 Sup. Ct. 318,—supports this view. These cases cited were ones in which the issue was in excess of the constitutional limitation. In the present case the issue of bonds under consideration was not in excess of 10 per cent. of the assessed valuation of the taxable property of the township. It is only by adding to the amount of these bonds the proportion of the court-house bonds payable by Gratton township that an excessive issue, if any, is found. Such sum, however, does not violate any provision of the state constitution. The constitutional limitation on municipalities in Nebraska is not as to the total bonded indebtedness for all purposes, but is a limitation upon the aggregate amount which may be issued for works of internal improvement. De Clerq v. Hager, 12 Neb. 185, 10 N. W. 697; State v. Babcock, 19 Neb. 223, 230, 27 N. W. 94, 98. A court house is not a work of internal improvement, within the meaning of the constitutional provision. Dawson Co. v. McNamar, 10 Neb. 276, 4 N. W. 991. The only limitation of law by which the amount of the prior issue for court-house purposes becomes material for consideration in this case is that found in the statute or legislative enactment before referred to. The rule which applies to a constitutional limitation is not usually applicable when the limitation is only statutory. When the limitations are imposed by the constitution itself, it may not be within the power of a legislature to dispense with them by the creation of a ministerial commission whose findings shall be taken in lieu of the facts; but, when the limitations are imposed by statute only, the legislature, being the source of limitation, may create a board authorized to determine the question, and its findings will be conclusive in favor of bona fide purchasers. Simonton, Mun. Bonds, §§ 221–225; Lake Co. v. Graham, supra; Sherman Co. v. Simons, 109 U. S. 735, 3 Sup. Ct. 502. That the municipal officers issuing these bonds were required to ascertain as a condition precedent to their issue whether the amount thereof, together with prior unpaid issues, exceeded in the aggregate the statutory limit, I have no doubt. Were the pur-

chaser to examine the records of bond issues, he would find none issued by Gratton township. But it is said in argument that he was bound by the facts shown by all records of a public nature; that he was bound to know that by the statute a county in Nebraska, when first organized, must be divided into precincts; that township organization can only be effected after precinct organization; that, as the law requires a record to be kept (and such record was kept) showing the names and boundaries of precincts and townships, he was bound to know that the territory comprising Gratton township was once a portion of Center precinct; and that, bound by this knowledge, he had notice that the bonds were issued in excess of the statutory limit. To this I cannot assent, but regard the proper rule to be that, when the limit of issue is to be ascertained from records or data which are peculiarly within the knowledge and control of the officers of the municipality, or they have better access to the information than other persons, and can ascertain the amount with more certainty than strangers, then the bonds will be held valid in the hands of a bona fide holder. Simonton, Mun. Bonds, § 224; West Plains Tp. v. Sage, 16 C. C. A. 553, 69 Fed. 943; Mutual Ben. Life Ins. Co. v. City of Elizabeth, 42 N. J. Law, 235. The fact of a change in the boundaries of Center precinct having been made, that upon adoption of township organization the territory comprising Center precinct became Gratton township, were facts peculiarly within the knowledge of the officers acting for the township, and, they having better access to the record information than purchasers of the bonds, I conclude that the defendant cannot have the benefit of this plea of excessive issue as against the plaintiff, who is a bona fide holder of the bonds. This conclusion renders it unnecessary to determine whether a part of the court-house bonds alluded to was an indebtedness of Gratton township within the meaning of the statute, imposing the limitation upon bond issues.

It is further urged that the bonds are void, even in the hands of plaintiff, for the reason that they were delivered in violation of a condition imposed in the proposition adopted by the voters of the township, which condition, as recited on the face of the bonds, was as follows:

"This bond is issued for the purpose of aiding the Nebraska and Western Railway Company in the construction of a railroad through said Gratton township; said railroad to pass into the county of Holt from the east, through the said Gratton township, and having cars running thereon to the city of O'Neill on or before August 1st, 1890."

It is claimed that the provision requiring the construction of the railroad through the township of Gratton, and having cars running thereon to the city of O'Neill by August 1, 1890, was a precedent condition to be fully performed before the authority existed for the delivery of the bonds; that, while the road was constructed, and cars running thereon to the city of O'Neill, by the time stated, the road had not been constructed through, but only about five miles into, said township, leaving six miles yet to be constructed before it would pass through the township. The fact of the nonconstruction through the entire breadth of the township was a physical one, of which pur-

chasers must take notice; and, further, that the recitals in the bonds are only to the effect that the provisions of the enabling act have been complied with; that they do not import a compliance with the conditions imposed by the proposition voted upon. It may be conceded that the building of the road into the township and having cars running thereon to the city of O'Neill was not a full performance of the condition requiring the road to be constructed through the township; but was such condition one precedent to the authority to issue the bonds? I think not. The enabling act or statute under which the bonds were issued provides for municipalities aiding railroads and other improvements therein mentioned. It imposes no condition that the bonds shall not be issued until after the completion of the improvement to be aided, and by no rule of construction can it be said that the intent of the act was rather to reimburse the party constructing the improvement for the cost, in whole or in part, by requiring that the object for which the aid should be voted be fully secured before the bonds could issue. Kenicott v. Supervisors, 16 Wall. 452–466. But, while the enabling statute did not impose any such condition, it was proper for the municipality in voting its aid to do so.

I do not think the provision as recited in the bond requiring the road to be built through the township a condition necessary to be performed before the bonds could be legally issued. A statute of the state of Illinois, authorizing towns to aid in the construction of railroads by subscribing for stock and issuing bonds therefor, provided that the town might, in the proposition, impose any conditions desired, and that the bonds should not be valid and binding until the conditions should have been complied with. In an action brought to recover on bonds issued by virtue of a proposition containing a provision that the railroad should be constructed through the town, and a depot erected therein (neither of which was done), the court, in the case of Town of Eagle v. Kohn, 84 Ill. 292–294, while holding the bonds void because of the declaratory provision of the statute, says (speaking with reference to such conditions under statutes which did not declare the bonds invalid):

"We do not think it is to be regarded that the conditions named were prerequisite to the making of the subscription and issuing of the bonds, and that they were to be complied with before the subscription could be made, or the bonds issued; but only that the subscription and the bonds were to be subject to the condition. There would be no want of power in making the subscription and issue of the bonds. As between the town and the railroad company, noncompliance with the condition would be a good defense against the railroad company."

This, in my judgment, is a correct view of the effect of the conditions imposed in the present case, as shown by recital in bonds. I have no doubt that it was not only competent for Gratton township to have provided that the bonds may have been issued in installments as the work progressed, or issued before the work was done; the township might also have provided (and did provide) in the proposition that the bonds should not be issued until the road was fully constructed. The condition, as contained in the proposition, was:

82 F.—56

"The proceeds of said bonds to be used in aid of the construction of a line of railroad passing into the county of Holt from the east and through the said township and to the city of O'Neill, in said county; such proceeds to be given to the Nebraska. and Western Railway Company when it shall complete a line of said railroad and have cars running thereon to the city of O'Neill on or before August 1st, 1890."

But this is not the proposition as recited on the face of the bonds, and purchasers are not required to ascertain what conditions were contained in the proposition voted upon where such conditions are not shown on the face of the bonds, and the bonds, as in this case, recite a compliance with the law. Oregon v. Jennings, 119 U. S. 74, 7 Sup. Ct. 124. If the purchaser were to examine the proposition in this case, he would not be notified that the bonds were not to be issued and sold, but only that the proceeds of the bonds should not be delivered to the railway company until the road was constructed as provided. The fact that it was the proceeds of the bonds which were to be withheld would imply a prior sale. The provision for constructing the road through the township as recited in the bond, we think, was only declaratory of the enterprise which was to be aided. Even if the condition for building the road through the township as contained in the proposition and recited in the bonds be conceded to be a condition precedent to the issue, this would not render them void for want of power to issue. Burroughs, Pub. Sec. p. 506, writing with reference to such condition, says:

"The illegality which constitutes the want of power in this class of cases arises not merely from the fact that certain acts are conditions precedent to the issue, but from the declaration of the statute that they shall not be valid until the acts are done, or that they shall be void if the acts specified are not performed. It is the imperative command of the statute that stamps its impress of invalidity on the bonds."

In Simonton, Mun. Bonds, § 283, it is said:

"It may be stated generally that such bonds, in the hands of a bona fide holder, without notice of the nonperformance of the conditions, are valid; and against him the fact of nonperformance cannot be set up as a defense, unless the prior condition was one which was required to be performed by the constitution of the state, or the statute expressly declared the bonds should be void, unless the conditions were fulfilled, in which latter case the bonds will be invalid. The bonds, however, in order to protect the innocent holder, when the prior conditions have not been performed, or their performance waived, must contain such recitals,—usually that they are issued pursuant to the enabling act, reciting it, that assures the holder that all prior conditions have been performed."

In our opinion, the cases of Mercer Co. v. Provident Life & Trust Co., 19 C. C. A. 44, 72 Fed. 623, and Swan v. City of Arkansas City, 61 Fed. 478, referred to by counsel for defendant, are not in conflict with this view. We think the recitals on the face of the bonds of such a nature as to preclude the township from interposing the defense that the condition relative to the construction of the road through the township has not been complied with.

The defense that agents of the railroad company represented to the voters and petitioners that the road would be built as a transcontinental line, through the state into the coal fields of Wyoming to Ogden, Utah, which has not been done, was not urged on the argument, nor in the briefs of counsel. The bonds being negotiable secu-

rities, and the plaintiff a bona fide holder without notice, it does not require any citation of authorities to show that the defense is not available. The plaintiff not being a party to the proceeding brought to enjoin the collection of the tax levied to pay the bonds, the judgment in that case in no manner affected his rights.

For the foregoing reasons, the several defenses pleaded are unavailing, and judgment should be entered for plaintiff for the amount due on the several coupons set forth in the petition.